OF THE

## STATE OF MISSOURI

AT THE

APRIL TERM, 1900.

*(Continued from Volume 157.)*

CHAMBERLAIN, Appellant, v. MISSOURI ELECTRIC
LIGHT AND POWER COMPANY.

Division Two, June 30, 1900.

1. **Nuisance:** DAMAGE TO DWELLING HOUSE: EVIDENCE. In an action
for damages to certain dwelling houses caused by incessant vibra-
tions transmitted to them from an adjacent power plant, whereby
said houses are alleged to have been rendered untenantable for a
number of years and their rental value destroyed, evidence of the
average time that a large number of other dwellings in the same city
were vacant and could not be rented, during the period covered by
the alleged nuisance, was irrelevant, and not competent for any pur·
pose.

2. ———: ———: ———. Evidence of the average yearly cost of
repairs required by other dwelling houses, was likewise inadmis-
sible.

(1)

3. ———: ———: ———. So also was evidence that another house on the corner of the same block as plaintiff's, had been constantly rented and occupied.

4. ———: ———: ———: EXPERTS. But the opinions of experienced real estate agents, engaged in renting similar property, who knew from actual observation the condition of plaintiff's houses, were admissible to prove whether or not said houses could have been rented and kept rented.

5. ———: ———; INSTRUCTIONS. An instruction given by the trial court of its own motion is condemned, because of improper comments made therein, without any evidence to found them upon, or any adaptation to the case as made by the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED AND REMANDED.

*Daniel Dillon* and *John Dillon* for appellant.

(1) The court erred in overruling the objections of plaintiff to the testimony of the real estate agents called as witnesses by defendant. This testimony was clearly irrelevant to any issue in the case. It certainly had no pertinency to the issue of whether or not the operation of defendant's electric plant caused plaintiff's houses to shake or vibrate. The only excuse that can be urged for introducing it at all is that it tended to prove that the vacating of these houses by tenants and the inability to rent them, as shown by witnesses for plaintiff, was not on account of the shaking or vibrating of the houses. But it had no pertinency in this aspect. "To have one fact prove another there must be a necessary or probable connection between the two." Phelps v. Conant, 30 Vt. 284; 1 Greenl. on Evid. (15 Ed.), sec. 52; Patrick v. Howard, 47 Mich. 45; Russell v. Hearne, 113 N. C. 361; Swan & Billups v. Kidd, 78 Ala. 173; Harris v. Howard's Estate, 56 Vt. 656; Durkee v. Ins. Co., 159 Mass. 514; Hathaway v. Linkham, 148 Mass. 85; Baird v. Gillett,

Chamberlain v. Light & Power Co.

47 N. Y. 186; Bank v. Stewart, 114 U. S. 231; Lincoln v. Mfg. Co., 9 Allen (Mass.), 181; Bank v. Murdock, 62 Mo. 74; Bates v. Forcht, 89 Mo. 121; Morrison v. Garrison, 48 Mo. App. 54. (2) The court erred in overruling the objections of plaintiff to the testimony of the real estate agents called by defendant as to the amount of repairs which dwelling houses in St. Louis require on an average, that is, taking a number of houses, and averaging all the repairs among all the houses during a given period of time. This testimony was of the same character as the testimony as to the average time houses are vacant, and was irrelevant and improper for the same reasons which rendered that testimony improper. (3) The court erred in allowing Daniel Shine, a witness for defendant, to testify that the house on northeast corner of 20th and Olive streets, had been rented all the time. This house was next west of plaintiff's houses, but was a corner house and occupied as a saloon; whether it was rented or occupied or not, was utterly irrelevant in this case. (4) The court erred in refusing to allow the real estate agents, Reardon & Ryan, called by plaintiff, to testify as to whether or not it was possible to rent the houses of plaintiff, with the houses shaking and vibrating as they saw them. This testimony was pertinent and material and should have been admitted. One of the questions to be passed on by the jury was whether or not the shaking of those houses interfered with the renting of them. The witnesses called were men of years of experience in renting houses in St. Louis, and their opinion as to whether or not these houses could be rented or kept rented with the shaking and vibration in existence would have aided the jury materially in reaching a proper conclusion on this question. (5) The court erred in giving the instruction which was given by the court on its own motion. (a) In the first place there was no evidence to warrant the giving of such an instruction. There was

not a particle of evidence that any person who complained of the shaking or vibration of these houses was in the least whimsical. (b) Again, this instruction told the jury that in a large city like St. Louis, where trade and manufacture and commerce is so general, slight annoyances that are not found to be injurious by persons of ordinary physical condition and sense brought in constant contact with such vibrations and shaking, are not ground for damages. It is respectfully submitted that this is not the law, and that it lays down an erroneous test as to what annoyances are actionable, and especially when considered in connection with the evidence in this case. That the carrying on of a business in such a manner as to jar or shake the buildings on adjoining property and make it annoying and uncomfortable to live in them is a nuisance can not be denied, regardless of the kind of business so carried on, or whether it is a legitimate and proper business or not. Cleveland v. Gas Light Co., 5 C. E. Green (20 N. J. Eq.), 201.

*William B. Thompson* and *Albert Blair* for respondent.

(1) The demurrer to plaintiff's evidence in this case should have been sustained, it appearing that the suit was brought for damages covering an indefinite period of time, and for an alleged permanent nuisance erected by the defendant, which had been erected and maintained in the same condition for more than five years before the filing of the petition, and that no claim for damages had been made by the plaintiff until the bringing of this suit, seven years after the establishment of defendant's plant, and after the machinery had been erected and maintained by the defendant in practically the same condition that it was at the time of its erection. James v. City of Kansas, 83 Mo. 567; Markt v. Davis, 46 Mo. App. 272; Autenrieth v. Railroad, 36 Mo. App. 258; Doyle v. Railroad, 113 Mo. 286; Wallace v. Rail-

road, 47 Mo. App. 491; Martin v. Railroad, 47 Mo. App. 452; Howard County v. Railroad, 130 Mo. 652; Bunten v. Railroad, 50 Mo. App. 414. (2) Where a neighborhood is no longer occupied for residence purposes, and is used entirely for business and manufacturing purposes, the jar, noise and discomfort felt from the operation of heavy machinery is not actionable, except in the manner set forth in the instructions given by the court. Gibson v. Donk, 7 Mo. App. 37; Tipping v. Smelting Co., 11 H. L. cases, 642; Fertilizer Co. v. Malone, 9 L. R. A. 737; Powell v. Furniture Co., 12 L. R. A. 53; Gibson v. Showerman, 23 Mich. 448; Rogers v. Elliott, 146 Mass. 353. (3) The opinion of witnesses who, for long periods of time, in the city of St. Louis, have collected rents for tenement houses, and who were qualified, by reason of their experience, to make statements in reference to the average vacancies of such tenements, and the average cost of repairs, was competent evidence, and the admission of the same was not an error. Whitbeck v. Railroad, 36 Barb. 647; Lommeland v. Railroad, 35 Minn. 412; Loughran v. Des Moines, 72 Ia. 382; Keyes v. Smith York Goer Co., 53 Cal. 724; Givens v. Van Studdiford, 4 Mo. App. 498. (4) The testimony of Carey and Shines in reference to the effect upon the occupancy of the property for renting purposes, in the immediate neighborhood, was competent evidence to show that the mere shaking and vibration, in that neighborhood, caused no damage whatever to any of the property and was proper and admissible in evidence. Taylor on Evidence (5 American Notes), p. 257; Darling v. Westmoreland, 52 N. H. 401; Rockford v. Ernst, 68 Ill. App. 300; McAllister v. Ervine, 69 Mo. App. 442; Wharton on Evidence, sec. 29.

BURGESS, J.—This is an action by plaintiff against the defendant for fifteen thousand dollars damages to three

houses owned by her on Olive street in the city of St. Louis.

The petition alleges that defendant is a corporation organized under the laws of Missouri, and that plaintiff is, and at the times hereinafter mentioned was, the owner and in possession of the following described tract or parcel of land, situated in the city of St. Louis, in the State of Missouri, viz., a lot of ground in city block number 900, having a front of sixty-three feet and four and one-half inches on the north line of Olive street, by a depth of one hundred and seven feet and four inches to an alley, on which there are and were at all the times hereinafter stated, three houses numbered, respectively, 1927, 1929 and 1931, Olive street.

Plaintiff states that heretofore, viz., in 1889, defendant took possession of the tract of land situated on the south line of Locust street and extending from Nineteenth to Twentieth streets in said city of St. Louis, and running back southwardly to an alley, and being immediately north of said property of plaintiff, and separated therefrom by the said alley, which runs east and west through said block; and defendant heretofore, viz., in 1889, erected a power house and other buldings, and constructed and erected and put in place, large and powerful engines and other machinery on said ground occupied by it. And ever since their construction and erection defendant has operated said engines and machinery night and day, and in doing so has caused continual loud noises, and has caused a shaking, reverberation, vibration and quivering of the ground in the vicinity and especially of the said ground of plaintiff; and has caused the shaking, reverberation, movement and disturbance of said houses of plaintiff, and by reason of said noises and shaking and reverberation, movement and disturbance of said ground and houses of plaintiff said houses have been injured and damaged, making it necessary to repair the same from time to time, and continually, ever since defendant constructed and erect-

ed said machinery, as aforesaid, and by reason and in consequence of said shaking, movement and disturbance of said houses, plaintiff has been compelled to expend and has expended in the necessary repairs of said houses the sum of five thousand dollars.

And said shaking, reverberation and movement of said houses and the ground on which they stand, have cracked, weakened and permanently injured and damaged said houses to the extent and in the sum of five thousand dollars.

And by reason and in consequence of the said noises, and the shaking, vibrating, reverberating, quivering and movement of said houses, it was impossible to rent the same, and they are, and have been, unfit for occupancy and untenantable, and they have been unoccupied and not rented nearly all the time, since defendant erected said machinery. And by reason and in consequence of said houses being rendered untenantable and unfit for occupancy, as aforesaid, plaintiff has been deprived of, and has lost the income and rental of said property to the extent and in the sum of five thousand dollars.

And plaintiff says that by reason and in consequence of the acts of defendant, aforesaid, she has been damaged in the sum of fifteen thousand dollars. Wherefore she asks for judgment for that sum and her costs.

To this petition the defendant filed the following:

"Now comes defendant in the above entitled cause, and for its amended answer to plaintiff's petition states that it admits it is a corporation organized under the laws of the State of Missouri. And defendant for further answer and defense to said petition denies each and every other allegation of said petition. Wherefore defendant, having fully answered, prays to be dismissed hence with its costs.

"And for a further answer and defense to said petition defendant states that, whatever injury accrued to plaintiff

herein by reason of any act or thing complained of in plaintiff's petition, or upon any cause of action therein stated, accrued to plaintiff more than five years next before filing her petition herein. Wherefore, defendant says the alleged cause of action stated in plaintiff's petition was, and is, barred by the statute of limitations; and defendant, having fully answered, prays to be dismissed hence with its costs."

A trial before the court and jury resulted in a verdict and judgment for defendant from which plaintiff appeals.

The evidence adduced by plaintiff tended to show that the operation of the machinery in the power house of defendant shook the houses of plaintiff, producing vibrations, and causing the windows to rattle, to such an extent that they were untenantable. This evidence extended back for a period of more than five years before the institution of the suit. A number of witnesses testified to the falling of plastering and to the breaking of glass, crumbling of plastering, etc.

John J. Reardon a witness for plaintiff testified that he was in the real estate business and had been for twelve years, and that he had been in one of those houses and noticed that it shook and that the windows rattled as if in a storm, and that the windows all over the house shook, etc. He said if there was no shaking the house could have been rented in 1892, 1893 and 1894 at $50 a month, and in 1895 and 1896 at $45 a month.

He was then asked this question: "Now, with the shaking there, as you found it, what do you say to the possibility of renting those houses or keeping them rented at those figures or any other figures?"

Defendant objected to the question, and the court sustained the objection, and plaintiff then and there excepted.

Jeremiah Ryan testified that he was in the real estate business, and that he had been in that business for six years, and that he had been in one of those houses and noticed that

Chamberlain v. Light & Power Co.

it shook considerably all over and that the windows shook, and that the chair on which he sat and the floor shook, and that the doors shook, etc. And that if there was no shaking there such as he found, the fair rental value of the houses, from 1892 to 1897, was $50 a month; and if no shaking, such as he noticed, they could have been kept rented at those figures during that period.

His further examination, by plaintiff, was then as follows: "Now, with the shaking that you noticed, in your opinion, as a real estate man, is it possible to keep those houses rented at anything like the figure you indicated?"

Counsel for defendant objected to the question, and the court sustained the objection and plaintiff excepted.

"Q. I will ask you, under the same conditions, with the shaking going on out there, is it possible to keep them rented at all?"

Defendant objected to the question. The court sustained the objection, and plaintiff duly excepted.

Daniel Shine, a witness for defendant, testified that he knew the house of Mr. Carey, on northeast corner of Twentieth and Olive and immediately west of 1931, and that it was occupied on the first floor as a saloon, and had been for a year, more or less.

Defendant then asked him this question: "Has that house been vacant, to your knowledge, within the last four years?"

Plaintiff objected to the question as irrelevant and immaterial. The objection was overruled and plaintiff duly excepted.

The witness answered: "I never kept any track of it; it seems to me it was always rented. I have been out of town."

Fed. Ziebig was a witness for defendant and said that he had been in the real estate business for twenty years,

and was of the firm of Cornet & Ziebig, and had charge of a good many houses scattered pretty generally over the city. His examination then proceeded as follows: "I shall ask you, supposing that a house is in the hands of an agent for five years, is not there a certain proportion of time that that house will be vacant? A. Yes, sir."

"Counsel for plaintiff: I object to that question; that has nothing to do with this case. It is calling for testimony that is irrelevant and immaterial." Objection overruled. Counsel for plaintiff, then and there, duly excepted to the ruling of the court.

"Q. Mr. Ziebig, taking a house situated on Olive street, say from Seventeenth to Twenty-sixth, where there are occupations of a variety of character, dwelling houses, boarding houses and saloons? . . .

"Counsel for plaintiff: I take it Mr. Ziebig knows that locality."

"Q. What, in your judgment, would be the per cent of time, I mean of vacancy, covering a period of five years?

"Counsel for plaintiff: I object to that as irrelevant, immaterial and incompetent."

"The Court: Mr. Ziebig, is there any definite percentage? Can you state any definite percentage of vacancies in houses such as indicated by counsel? A. I can not state that. I have kept no record, so that I have not anything definite to show that such are the facts. I can only state that we estimate that there is a certain per cent of vacancies.

"Q. What do you base your percentage on? A. On our experience, taking it as we go along.

"The Court: You may answer the question." To which ruling of the court, plaintiff, then and there, duly excepted.

"Q. Please answer the degree and extent of vacancy,

the percentage of vacancy, in that time.  A.  About seven and a half to eight per cent.  I would say that, applied particularly to the district indicated, it might run a little higher in this district; that is about it, I think.

"Q.  Taking a brick house, stone front, two stories, with a third story mansard roof, upon usual foundations and walls of usual thickness, what would you say would be the cost of keeping them in suitable repair for tenants, covering a period of five years, houses twenty years old?

"Counsel for plaintiff:  I make the same objection—that the question calls for testimony that is irrelevant, immaterial and incompetent.

"Q.  Mr. Ziebig, can you answer the question stated, with any degree of accuracy.  A.  I think I can come very near it."

Objection overruled.

Counsel for plaintiff then and there duly excepted to the ruling of the court.

The witness answered:  "The cost is from $40 to $50 a year on an average."

"Q.  For each house?  A.  Yes, sir."

"Counsel for plaintiff:  That is all objected to and exception saved."

Charles A. Mueller, a witness for defendant, testified that he was a real estate agent and had been in the business twenty-seven years and was familiar with the renting of houses in this city.  His further examination was as follows:

"Q.  Are you able to state from your experience the per cent of vacancies of dwellings in a district such as that about Twentieth and Olive, one year after another?

"Counsel for plaintiff:  I make the same objection as I did before—that is, that it calls for evidence that is irrelevant, immaterial and incompetent.

"The Court: 'During the last five years.' Objection overruled by the court. To which action of the court, plaintiff then and there duly excepted.

The witness then answered: "I would say ten per cent is the loss by vacancies."

"Q. Are you able to state, relative to repairs, how much on an average is required to keep a house, say a nineroom stone front, with Mansard roof, twenty or twenty-five years old, in repair?"

Same objection by plaintiff as to last previous question. Objection overruled by court, to which action of the court, plaintiff then and there excepted.

The witness answered: "It would take $40 or $50 a year. I have always found that tenants object to living next to a saloon; it is harder to rent."

On cross-examination the witness said: "Some houses are rented more continuously than others. Where the tenant is satisfied with the business he is doing or is prosperous he is likely to remain. Each house about stands on its own individual circumstances after all. The same is true of repairs; some of those houses we repair four times as much as others; we take the average in summing up, and that is about what it would be. If a dwelling is situated near a power house, and the machinery therein shakes the house so as to cause the windows to rattle and prevent people from sleeping, it would have some effect on the renting, certainly."

On re-direct examination he said: "The houses would rent, but of course they wouldn't bring the same rent as if they hadn't that noise there; I would think the rental was doing very well if there was less than ten per cent vacancies with all that noise."

Festus J. Wade, sworn on part of defendant, said he had been in the real estate business fifteen years in St.

Louis; his firm was Anderson-Wade Realty Co. His further examination was as follows:

"Q. Mr. Wade, in your experience as a real estate agent in the renting of dwelling houses in the city of St. Louis, what would you say would be the average amount or per cent, with reference to the time as to vacancies, covering a period of, say five years?"

"Counsel for plaintiff: I object to that as irrelevant, immaterial and incompetent." The court overruled the objection and plaintiff then and there duly excepted.

The witness answered as follows: "Well, a great deal would depend upon the character of the property. If it is new, the vacancies of course would be of less frequency than old property. Property, such as you·referred to a short time ago, would run from ten to fifteen per cent for vacancies in houses probably fifteen or twenty years old. Repairs would run about ten or fifteen per cent in keeping property of that character up."

On cross-examination the witness stated:

"Of course, Mr. Wade, what you mean by that is that some houses are rented nearly all the time, and others are vacant a great deal of the time, and taking each particular house when you come to an average of all of them, they average about as you have stated? A. Yes, sir; a general average.

"Q. You don't mean to say all houses are vacant the same extent of time? A. No, sir; but I will explain if you will allow me. A house located on Lindell boulevard would not be apt to be vacant as frequently as a house located on Olive street, about where these houses are."

Adam Boeck, sworn on the part of defendant, said he had been a real estate agent in the city of St. Louis since 1866; had experience in renting dwellings in this city. His further examination was as follows:

"Q. From your experience, as a real estate agent, in managing dwelling houses, what would you say would be the average amount of vacancies, in per cent of time, that houses would be vacant on an average, say, during a period of five years at the present time?"

"Counsel for plaintiff: I make the same objection as I did to the former witness, viz., that the question calls for testimony that is irrelevant, immaterial and incompetent." Objection overruled, and counsel for plaintiff then and there duly excepted to the ruling of the court.

The witness then answered: "The average of vacancies, of course, will depend a good deal on the kind of times we are having, but within the last five years times have been rather depressing and there are really more houses than people to rent them; therefore, the vacancies have been greater on an average than they would have been in more prosperous times. I should say that about ten months out of twelve would be a fair average of houses that are not new—brand new. A brand new house would likely be occupied the whole twelve months out of the year, but houses like those on Olive street between Nineteenth and Twentieth, I should say, ten months out of twelve would be occupied; would be vacant two months out of twelve, sixteen and two-thirds per cent.

"Q. Now, what would you say as to your repairs—as to the average amount expended for repairs for the houses per year?"

"Counsel for plaintiff: The same objection, viz., that the question calls for testimony that is irrelevant, immaterial and incompetent." Objection overruled by the court. Counsel for plaintiff then and there duly excepted to the ruling of the court.

The witness answered: "On houses that are as old as those houses, are those two houses—understand those two houses

I am to apply myself to—I think would be fully twenty per cent, and, taking five years, having to look after the roofs as well as the other portions of the houses, I think twenty per cent would come near to the amount that you would have to put down for expenses for repairing the houses and keeping them in order. I mean twenty per cent of the rent collected. Assuming the rent to be $45 a month and rented for ten months a year, making rent received $450 a year, I think it would cost $90 a year for repairs. I have an impression these houses have been built between fifteen and twenty years. I am agent for house next east of 1927 Olive street; it is occupied now and has been steadily for two and a half or three years; before that we had considerable vacancies."

On cross-examination the witness testified as follows:

"The house I am agent for belongs to Mr. Dodd, president of defendant. It is occupied as a boarding house; the same tenant occupies the east house of these three houses of plaintiff.

"Q. Well, of course the same as you heard me ask Mr. Wade, when you get at a certain percentage of these things, you mean, pick out a number of houses and average them up; for instance, you take the house of Mrs. Irons, that has been occupied for two years steadily and put that with the others? A. Yes, sir.

"Q. That is, you want to say that some houses rent right along and others are vacant a great deal? A. Yes, sir.

"Q. When you come to average them up, that is about the percentage, that would be about correct? A. Well, that is about right.

"Q. The same way in regard to repairs? A. In other words, I think. . . . Now Mr. Boeck, the same is true in regard to repairs; some houses require more than others? A. The repairs depend entirely on the construction of the

house; houses that are well constructed don't need as much repairs as those that are not.

"Q.   Then I am correct in saying the amount of repairs on one house may be entirely different from the amount of repairs on another house?   A.   Yes, sir, that is according to construction.

"Q.   For various, divers and sundry reasons, one house may require a great deal of repairing and another may not? A.   That is not so much a matter of chance.   I think the repairs of houses is not much like chance.

"Q.   All houses don't require the same amount?   A. If they are all built the same.

"Q.   They are not all built the same?   A.   No, sir.

"Q.   Then as a matter of fact all houses don't require the same amount of repairing?   A.   Well, all right.

"Q.   Ain't that true?   A.   All right; we will agree on that."

Among the instructions that were given to the jury, there is but one criticised by plaintiff, and that one was given by the court of its own motion.   It reads as follows:

"The jury are instructed that if they shall find that by reason of vibrations and other disturbances produced by defendant, plaintiff's said houses were injured and plaintiff has lost rents, the jury in estimating plaintiff's damages for such injuries and losses, shall include damages only for those injuries and losses which are directly the result of the vibration and disturbance produced by the defendant, and in estimating such damages the jury should not consider the cost of repairs made necessary by ordinary wear and tear, and such losses of rents as under the testimony would probably have occurred if such vibration and disturbances had not occurred.

"The court instructs the jury that the plaintiff in this case, in order to recover, must prove by a preponderance of the testimony, a real and tangible injury to her property,

either permanent or by necessitating repairs, or causing vacancies in the premises caused by the shaking or vibrations due to the operation and maintenance of an electric plant by defendant, because in a large city like St. Louis, where trade and manufacture and commerce are so general, slight annoyances that may cause inconvenience to whimsical persons, but which do not produce any real and substantial injury to property as indicated above, or are not found to be injurious by persons of ordinary physical condition and sense brought in constant contact with such vibration or shaking, must be endured, and are not the ground for damages, and in this case plaintiff is not in any event entitled to any damage for any injury to her property, which you believe from the evidence resulted from any other cause, such as cable cars or other causes, than the shaking and vibration caused by defendant's plant and machinery."

To the action of the court in giving this instruction, plaintiff then and there duly excepted.

The first question presented for consideration on this appeal is with respect to the action of the court in admitting over the objections of plaintiff testimony of real estate agents to the effect that taking a large number of dwelling houses in the city of St. Louis for a period of five years before the trial, and the average time the houses taken as a whole would be vacant, would equal a certain per cent of the whole period. Plaintiff's contention is that this evidence was incompetent for any purpose, while defendant insists that even if the admission of such evidence was error, it was harmless error, because it went solely to the measure of damages, and could have had no influence in determining the question whether plaintiff's right had been violated in the manner charged in the petition. It seems to us that defendant's contention is illogical, for if as it virtually concedes, the evidence was not competent for the purposes of determining

the question whether plaintiff's rights had been violated in the manner charged in the petition, it must follow, that it was not competent as to the measure of damages, for if it were shown that plaintiff had sustained no damages in the way of loss of rents, this would have been a perfect defense in so far as this branch of the case was concerned. Besides no question as to the average length of time that houses which were usually rented in this locality were vacant is presented by the pleadings, and the rule is that "evidence must correspond with the allegations and be confined to the point in issue." [1 Greenl. on Evid. (15 Ed.) secs. 50, 51, 52; Iron Mt. Bank v. Murdock, 62 Mo. 70].

Moreover, as the rental of houses depends so much upon their locality, structure, convenience, and conditions which render them habitable or otherwise, the proportion of time which any particular house may be rented, unless in the same locality and of similar character and condition, furnished no criterion by which the length of time that plaintiff's houses were not rented could be determined.

It will not be contended that a house which vibrates and shakes to such an extent as to render it uncomfortable, would rent so readily as other houses in the same locality not thus affected. In other words each house must, in a large measure, stand upon its own individual merits.

The evidence was clearly inadmissible for any purpose and should have been excluded.

So, with respect to the action of the court in overruling the objections of plaintiff, to the testimony of the real estate agents, witnesses for defendant, with respect to repairs which dwelling houses in the city of St. Louis require yearly upon an average. This testimony was also inadmissible, and should have been excluded for the same reasons.

It is asserted by plaintiff that the court erred in allowing David Shine, a witness for defendant, to testify that the

house on the northeast corner of Twentieth and Olive streets had been rented all the time. This house was next west to plaintiff's house, but was a corner house and occupied. Whether this house was or was not occupied, had no bearing whatever upon the issues in this case. It would be difficult to conceive of any matter less relevant.

Plaintiff also insists that the court erred in refusing to permit the real estate agents, Reardon & Ryan, called by her to testify as to whether or not it was possible to rent the houses of plaintiff, with the houses shaking and vibrating as they saw them.

These witnesses testified to the condition of the houses from actual observation, they were experienced in renting houses in the city, and it was entirely proper, we think, for them to give their opinions as to whether the houses could be rented or kept rented, in the condition that they were then in, providing their condition was then the same as before this suit was instituted.

The instruction given by the court of its own motion is criticised upon four grounds, the first of which is the improper use of the words "whimsical persons" therein, when there was no proof that any of the witnesses were people of that kind. By the use of these words it seems to be implied that the persons who moved into and then out of plaintiff's houses because of their shaking and vibrations, were not ordinary persons, having ordinary sensibilities, but were persons of peculiar notions or ideas, when there was no evidence to justify any such implication.

The second criticism is that this instruction in effect told the jury that in a large city like St. Louis, where trade and manufacture and commerce is so general, slight annoyances that are not found to be injurious by persons of ordinary physical condition and sense brought in constant contact with such vibrations and shaking, are not grounds for dam-

ages.   While  the principle  thus announced  is true  as  an abstract proposition, the only inference that could be drawn by the jury from the words, "slight annoyances," as used in the instruction was, that the shaking and vibrations were of that character, hence the plaintiff was not entitled to recover, while the extent of the annoyance, if any, occasioned thereby was for the consideration of the jury.

The third and fourth grounds upon which the instruction is criticised we think untenable.

For these considerations we reverse the judgment and remand the cause for further trial.

*Gantt, P. J.,* and *Sherwood, J.,* concur.