# FIRST NATIONAL BANK OF MEXICO, Appellant,
## v. CLARENCE C. RAGSDALE.

### Division One, December 24, 1902.

1. **Replevin:** FRAUDULENT MORTGAGE: INSTRUCTION. In a suit in replevin for cattle by a bank against B., an instruction which tells the jury to find for the defendant if they believe the note and mortgage, under which the bank claims, were made by A. for the purpose of defrauding any person to whom he could sell such note and mortgage, or if A. had no definite cattle in mind when the same was made, or if the description in the mortgage did not suit and was not intended for the cattle taken under the replevin writ, is error. For if the cattle belonged to A., it is none of B.'s concern whether A. intended to defraud some one or not, or whether the description fits the cattle or not. Nor could any such questions be litigated in a suit where the only issue is whether the cattle belonged to A. or B., for B., being the sole defendant, can not defend on the theory that A. intended a fraud when he made the note and mortgage, for that is a defense A. could not make for himself.

2. **Chattel Mortgage:** NON-APPARENT INTENTION. An intention of the mortgagor not expressed or hinted at on the face of the mortgage can not affect its validity.

3. ———: INTENTION OF MORTGAGOR: REPLEVIN. In a suit in replevin against B. for cattle which it is claimed were covered by a mortgage

given by A. it is error to instruct the jury that they must "return a verdict for the defendant regardless of the ownership of the cattle at the date of the mortgage" if they find that A. by the mortgage did not intend to cover the cattle in suit.

4. ———: REPLEVIN: EVIDENCE OF OWNERSHIP. In a replevin suit, where the only question at issue is whether the cattle replevied belonged to the defendant or to A. who made the chattel mortgage under which plaintiff claims, evidence as to whose money paid for the cattle is properly admitted as bearing directly on the question of ownership. So also should evidence as to the state of the account between them be admitted and for the same reason, if there arises a question as to whether money sent by A. to B. was used or to be used by B., in purchasing cattle for A., or for paying a subsisting debt.

5. ———: ———: ADMISSION: ESTOPPEL. Admission by the defendant that the cattle in suit in replevin did not belong to him, but to the mortgagor, to pay whose debt the suit is brought, do not estop him from showing that the cattle were his, if neither the plaintiff nor any one else has parted with anything of value or changed position in regard to them by reason of such admissions. But such admissions are competent as bearing on the question of his ownership.

6. ———: ———: INSTRUCTIONS: PRACTICE. Instructions which are good as far as they go but do not cover the whole case, amount, in civil cases, only to non-direction, and not to error. In such case it is the duty of the other party to ask for proper instructions supplying the defects of those given, and if he does not do so he cannot complain that they did not cover the whole case.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*W. M. Williams* for appellant.

(1) The court committed manifest error in giving defendant's sixth instruction. It stands upon precisely the same principle as the erroneous ruling of the trial court, for which the judgment was reversed upon the former appeal. This instruction is not predicated upon the theory that the cattle did not belong to Crockett B. Ragsdale, but notwithstanding they may have been his property at the time the mortgage was given, and were held by defendant as his agent when the suit was

instituted, still the jury were told that the verdict must be for defendant, if Crockett B. Ragsdale executed the mortgage for the purpose of defrauding any person to whom he could sell the note, and had no definite cattle in mind when the mortgage was made, and the description therein did not suit and was not intended for the cattle in controversy. Bank v. Ragsdale, 158 Mo. 680; Harris v. Kennedy, 4 N. W. 851; Tyler v. Hall, 106 Mo. 313; 1 Jones on Mortgages (2 Ed.), 683; Bank v. Bank, 50 Mo. App. 92. (2) If defendant held the cattle as agent of Crockett B. Ragsdale, and there was certainly evidence tending to prove that fact, it was error to tell the jury that he might defeat a recovery under the mortgage on the ground of his principal's fraud. A party can not take advantage of his own wrong. (3) Defendant's fifth instruction is erroneous, and in conflict with the rule laid down by this court, upon the former appeal, to govern the retrial of the cause. It was not proper to tell the jury that if the mortgage was not intended at the time it was given by C. B. Ragsdale to cover the cattle taken under the writ of replevin, the verdict should be for the defendant, regardless of the ownership of the cattle at the date of the mortgage. The mortgage should be held to apply to these cattle until Crockett B. Ragsdale, or his agent, "produces some evidence to show that he had another lot of cattle filling that description, and that it was the lot of cattle covered by the mortgage." Bank v. Ragsdale, 158 Mo. 680. (4) Defendant's fourth instruction should not have been given. Crockett B. Ragsdale advanced $2,165 upon a mortgage held by J. R. Johnson on some cattle claimed by defendant, which were subsequently sold, and out of the proceeds the cattle involved in this suit were, in part, paid for. In order to explain why he was entitled to Crockett Ragsdale's money advanced on this mortgage, and why the cattle were not liable for the mortgage debt, defendant stated that in April, 1895, he contracted to sell the cattle to Crockett Ragsdale at $40 per head, to be delivered between the first and twentieth of August, and that they were not accepted or paid for,

and when he sold them in February following, the loss on the cattle and the expense of feeding them exceeded the mortgage debt.    (a)    It does not appear that any binding contract of sale was ever made.    There was no memorandum in writing of the sale; no delivery of the cattle, and no part payment of the purchase price.    Harvey v. Joint Stock & Ben. Ass., 39 Mo. 211; Palmer v. Ellsberry, 79 Mo. App. 570.    (b)    It was erroneous to tell the jury that, notwithstanding Crockett Ragsdale paid the mortgage of $2,100, yet if the amount so paid was no more than defendant's loss on account of the cattle going down in the market, and the expense of keeping them, defendant was entitled to the entire proceeds.    The cattle were not sold in August, the date fixed for their delivery to Crockett B. Ragsdale.    There was no evidence of the market price at that time.    Defendant could not keep the cattle until February, 1896, and then sell them and hold Crockett B. Ragsdale for the expenses and losses as shown by a sale at that time; and the fourth instruction should not have told the jury that he could do so.    The sale was too remote from the date fixed for the delivery to be made the basis of damages against Crockett B. Ragsdale for failing to take the cattle in the preceding August.    Rickey v. Tenbroeck, 63 Mo. 567; Anderson v. Frank, 45 Mo. App. 486.    (5)    (a)    The seventh instruction improperly singled out particular parts of the evidence and directed the jury's special attention thereto, and was misleading.    (b)    But, in addition, it should not have been given because it ignored the question of estoppel, arising from the actions of plaintiff and Latimer induced by the admissions referred to in said instruction.    If defendant disclaimed ownership of the cattle, and admitted that they belonged to Crockett B. Ragsdale, and were covered by the mortgage, and induced the plaintiff and Latimer to act upon these representations, it is not true that no effect should be given to such admissions, if the jury should find that defendant was in fact the owner of the cattle.    His admissions, acted upon by the other parties, can not be withdrawn to their injury.    State ex

rel. v. Castille, 51 Mo. App. 143; Reynolds v. Kroff, 144 Mo. 443; Raley v. Williams, 73 Mo. 310; Tyler v. Hall, 106 Mo. 313.   (c)   It was unnecessary in this action to plead the facts relied upon as constituting the estoppel.   Tyler v. Hall, supra; Bank v. Ragsdale, supra.

*Geo. Robertson* for respondent.

(1)   Plaintiff failed to establish any title to the cattle in controversy.   It is a universal rule that the plaintiff in replevin must recover upon the strength of his own title and not upon the weakness of that of his adversary.   Gartside v. Nixon, 43 Mo. 138; Sheble v. Curdt, 56 Mo. 437; Summons v. Austin, 36 Mo. 307; Cobbey on Replevin, sec. 99; Eastern v. Flemming, 78 Ind. 116; Reinheimer v. Hemingway, 35 Pa. St. 432; Stanley v. Neale, 98 Mass. 343; Coodman v. Kennedy, 10 Neb. 270; Holler v. Colson, 32 Ill. App. 324; Kennedy v. Dodson. 44 Mo. App. 550; Moore v. Carr, 65 Mo. App. 64; Springfield v. Shackelford, 65 Mo. App. 364.    (2)   The description in the mortgage is not suited to the cattle taken under the writ of replevin. On December 13, 1895, Crockett Ragsdale did have on the Beagless farm in Audrain county, 133 head of feeding cattle on feed suiting the description contained in the letter sent with the mortgage to Latimer.   One hundred head of the cattle taken under the writ of replevin were on December 13, 1895, on the farm of William Dyer in Callaway county and twenty of them were in the possession of the defendant on his farm in Ralls county, mixed with other cattle of his own and those of his wife of similar description, and instead of being on feed and weighing 1,000 pounds, were yearling stock cattle and would weigh from 550 to 600 pounds.   The proof, therefore, shows that the cattle taken under the writ of replevin were not the cattle described in the mortgage.   Authorities, supra, point 1; Bank v. Ragsdale, 158 Mo. 680; Stonebreaker v. Ford, 81 Mo. 532; Hughes v. Menefee, 29 Mo. App. 192.   (3)   The state-

ments in the motion for new trial that "the court erred in admitting improper evidence over plaintiff's objections" and that "the court refused proper evidence offered by plaintiff," are not sufficient written specifications of error within the meaning of section 640, Revised Statutes 1899, to constitute a cause for motion for new trial. Thompson on Trials, secs. 2754 to 2756; Heine v. Morrison, 13 Mo. App. 577; Ray v. Thompson, 26 Mo. App. 431. In State v. David, 159 Mo. 531, it is there held that the assertion in the motion for new trial that "the court erred in admitting incompetent and immaterial evidence on the part of the State and in excluding competent and material evidence offered by defendants" are assignments of such a general character as to be insufficient without more specific reference to call the attention of the court to what evidence is meant. (4) The defendant's fourth instruction is not error. Although Crockett Ragsdale may have made a payment on the cattle, yet if he did not pay or offer to pay for them, from August 1 to August 20, the title never passed to him, and he forfeited what he had paid. Crockett Ragsdale's failure to pay the remainder going on the cattle caused him to forfeit all he had paid. Felix v. Berington, 52 Mo. App. 403; Bishop on Contracts, sec. 1349; Dobbins v. Edmonds, 18 Mo. App. 316. (5) Admitting as true all that Latimer claims as to defendant's admissions, there is no estoppel, and plaintiff's first instruction was properly refused. Latimer does not say that he told defendant he had indorsed the note or had incurred any liability on it. The note at the time of the meeting at Paris belonged to this plaintiff. Latimer's control was gone, and it does not appear that he was in any position to do anything or intended doing anything or that defendant prevented him from taking any steps. Bates v. Perry, 51 Mo. 499; Brown v. Miller, 46 Mo. App. 1; Bartlett v. Roberts, 66 Mo. App. 125; Burke v. Adams, 80 Mo. 504; Rogers v. Marsh, 73 Mo. 64; Jones v. McPhilips, 82 Ala. 116; Stevens v. Dennett, 51 N. H. 333; Brown v. Brown, 30 N. Y. 541. (6) The verdict of the

jury is based upon substantial evidence in the case. In fact, the only evidence in the case bearing upon the ownership of the cattle is to the effect that they were the property of defendant. The appellate court will not disturb the verdict of the jury even if there is slight evidence to sustain it. Watts v. Douglass, 10 Mo. 676; Coudy v. Railroad, 85 Mo. 79; Price v. Evans, 49 Mo. 396; Rea v. Ferguson, 72 Mo. 225. (7) There was no error materially affecting the merits of the case and the verdict is for the right party, and therefore the judgment of the circuit court should be affirmed. Sec. 865, R. S. 1899; Brown v. City of Liberty, 131 Mo. 372; Comfort v. Ballingall, 134 Mo. 281.

MARSHALL, J.—This is an action in replevin for one hundred and twenty head of cattle, begun in the Monroe Circuit Court to the October term, 1896, and by consent of parties the venue changed to Audrain county. This is the second appeal, to this court, of the case. The decision on the first appeal is reported in 158 Mo. 668. The second trial resulted in a verdict and judgment for defendant and the plaintiff has again appealed.

Upon the first trial and appeal the defendant claimed that the note and mortgage under which the plaintiff claimed title were never delivered to the mortgagee and were never uttered by him, but that the mortgagor indorsed the mortgagee's name on the back of the note and himself uttered the note and mortgage in that way directly, and, therefore, no title passed thereunder. This view had been taken by the trial court, and in consequence that court excluded the note and mortgage, and that ruling resulted in the plaintiff suffering a nonsuit. On the former appeal that contention was decided against the defendant by this court and the judgment of the trial court was reversed and the cause remanded for trial anew. On the second trial in the circuit court the defendant claimed that the cattle seized under the writ of replevin in this case belonged to him and not to the mortgagor; that the particular

cattle seized in this case never belonged to the mortgagor, but were purchased by the defendant with his own money; and furthermore that at the date of the execution of the mortgage the only cattle that were owned by the mortgagor that in any way answered the description of the cattle in the mortgage, were one hundred and thirty-three head, on which Clay, Robinson & Co., of Chicago, had a mortgage, and that those cattle were shipped to Clay, Robinson & Co. in January, 1896, and by them sold, their mortgage debt deducted and the balance sent direct to the mortgagor. In this connection it is proper to observe that one of the contentions of the plaintiff is that the balance so resulting was sent by the mortgagor to the defendant for the express purpose of being used to partly pay for the cattle that were seized under the writ in this case.

It will be necessary, therefore, in this case to restate the salient facts as developed upon the second trial, which for the sake of perspicacity will be stated in their chronological order, without regard to whether they were developed on the trial by the plaintiff or the defendant.

Crockett B. Ragsdale and the defendant, Clarence C. Ragsdale, are half-brothers. Crockett was assistant cashier of the First National Bank of Hannibal. Clarence was a farmer and lived near Perry, Ralls county. In the winter of 1894 the First National Bank of Hannibal had a mortgage on three hundred head of cattle, made by one Rogers, of Monroe county, and to prevent loss the bank took the cattle, turned them over to Crockett, he assuming the debt that Rogers owed the bank, and he placed them in the care of Clarence to be fed and sold. Crockett owned two farms near the farm owned by Clarence, on which he made extensive improvements. Crockett owned, as hereinbefore stated, one hundred and thirty-three head of cattle, which were cared for by Clarence, and sold in January, 1896, to Clay, Robinson & Co. Clarence ''bargained'' to sell Crockett one hundred and sixty-one head of cattle for

$40 a head, to be delivered from the 1st to the 20th of August, 1895, on which, however, one Johnson had a mortgage for $2,165. Crockett took up the Johnson mortgage, but did not take the cattle, and in the following February Clarence sold them, and claims that the loss and cost of feeding them left Crockett in his debt in an amount in excess of the $2,165 that Crockett had expended in taking up the Johnson mortgage on the cattle.

In September, 1895, one hundred of the cattle seized on the writ of replevin in this case belonged to Lute Smith and were on his farm in Callaway county, and the balance belonged to Eph Hughes, and were in his possession. They were yearlings, and not such cattle as are known to stockmen as "feeding cattle." Clarence contracted to buy these cattle and paid Smith two hundred and fifty dollars on account of the agreed purchase price, and on January 22, 1896, Clarence paid Smith the balance of the purchase price and took the cattle to his (Clarence's) farm, in Ralls county. Clarence also paid Hughes for the remaining cattle and took them to his said farm. Clarence claims that it was his money that paid for these cattle, while the plaintiff claims it was Crockett's money that paid for them—the balance resulting from the sale of the one hundred and thirty-three head sold by Crockett to Clay, Robinson & Co., amounting to $1,085.86, being alleged to be a part of the money belonging to Crockett which was used to pay for the cattle here in controversy.

On December 15, 1895, Crockett made a promissory note for $3,500, due May 1, 1896, to the order of Clarence, and secured it by a chattel mortgage on "one hundred and twenty head of feeding cattle now on feed in Audrain county, Missouri." Clarence knew nothing about the note or mortgage and never had possession of it. Crockett, however, indorsed Clarence's name on the back of the note, and sent the note and mortgage to W. A. Latimer, at Sedalia, with a request to him to negotiate it. In the letter transmitting the note and mortgage, Crockett said to Latimer that the cattle were

"one thousand pound cattle," and that he had his own corn to feed them and expected to ship them April 1st and May 1st, 1896. Latimer sent the note and mortgage to brokers in St. Louis, who sold them to the plaintiffs in this case, and remitted the proceeds to Latimer. Crockett was indebted to Latimer in the sum of over two thousand dollars. Latimer deducted this debt from the proceeds of the sale of the note and mortgage, and sent the balance, amounting to $1,175.57 to Crockett, and Crockett placed that sum to Clarence's credit in the Perry bank on January 25, 1896, and it is claimed by the plaintiff that this sum was used by Clarence in partly paying for the cattle in question. It will be noted, however, that this sum was placed to Clarence's credit in the Perry bank on January 25, 1896, and that Clarence says he made the final payments for these cattle to Smith and Hughes on January 22, 1896.

It is claimed by Clarence that he did work for Crockett on his farms, built houses, furnished materials, "tended" his cattle, furnished corn to feed his cattle, etc., amounting to a very considerable sum in all, and that Crockett is still in his debt. On the other hand, it is claimed and was offered to be shown by the plaintiff that during 1894 and 1895 Crockett paid checks drawn by Clarence on the First National Bank of Hannibal, amounting to $5,600, but the court below excluded this evidence as being prior to the date of the mortgage or the purchase of the cattle in question, and too remote to throw light upon this controversy, and this ruling is included in the plaintiff's assignment of errors here.

In March, 1896, it was discovered that Crockett was a defaulter to the First National Bank of Hannibal for something like $18,000, which he had used to purchase a farm in Callaway county, Missouri, and one in Pike county, and had invested in various business projects. At that time there were on his farm 277 head of cattle, thirty of which the defendant claimed belonged to his (defendant's) wife. It developed that the First National Bank of Hannibal had a mortgage purporting to

cover three hundred head of cattle.  The plaintiff had the mortgage involved in this suit purporting to cover one hundred and twenty head of cattle.  Other mortgages were also outstanding that Crockett had executed, purporting to cover certain other amounts of cattle.

When the crash came, Latimer, who was the indorser on the note, secured by the mortgage in question, went to see the defendant and met him about the first part of March, 1896.  He exhibited a copy of the mortgage to the defendant, and inquired about the cattle. The defendant told him that the cattle were on his (defendant's) farm, and that they belonged to Crockett, and that he (defendant), had no interest in the cattle except a share in the profits and a claim for a feed bill. He promised Latimer to separate the cattle described in the mortgage from the other cattle on his place, to brand them or put rings in their ears, to hold them to satisfy the mortgage, and to notify every one that they were covered by this mortgage, and to write to Latimer as soon as they were branded.  A few days later Latimer received a postal purporting to be signed by the defendant, dated March 19, 1896, stating that the cattle had been separated, rings put in their ears and that "they were doing fine."  It is proper to state here that the defendant denies writing this postal and says his wife wrote it against his wishes.  After this the cattle were permitted to remain in defendant's possession until this suit was instituted on the 27th of October, 1896.

The plaintiff showed by the testimony of four other persons that in the spring of 1896 the defendant told them he had no interest in the cattle except an interest in the profits and a feed bill, but that they belonged to Crockett and were the cattle intended to be included in the plaintiff's mortgage.  The defendant does not controvert these statements, but says they were made under stress of the excitement and humiliation incident to his brother's arrest and troubles.

This is substantially what the facts were shown to

be. The abstract of the record then recites that "Thereupon the court on its part gave the following instructions:

"At the close of the evidence for the plaintiff the court instructs the jury that under the pleadings and the evidence the plaintiff is not entitled to recover, and the only question for your decision is as to the value of the cattle described in the writ of replevin.

"To which action of the court the plaintiff excepted and saved its exceptions."

The abstract of the record then recites that the plaintiff asked and the court refused to give a certain instruction, which is fully set out, and that the plaintiff duly excepted.

The abstract of the record then contains five instructions given at the request of the plaintiff and five instructions given at the request of the defendant, which instructions express the several theories of law upon which the parties respectively tried the case, and which left it to the jury to decide whether the plaintiff was entitled to recover or not.

This contradictory state of the record has not been referred to by counsel on either side, and it is incomprehensible that the court could have instructed the jury that the plaintiff was not entitled to recover and that the only question for the jury was the value of the cattle, and at the same time have given ten instructions at the request of the parties litigant, covering every phase and theory of the case, and leaving it to the jury to find for one party or the other as they might decide.

Under this state of the record the ends of justice will be best subserved by treating the case as the parties themselves have treated it, to-wit, as if no such peremptory instruction had been given.

The jury returned a verdict for the defendant and assessed the damages at $5,202.80, and after proper steps the plaintiff appealed.

## I.

The first error assigned is the sixth instruction given for the defendant which is as follows:

"The court instructs the jury that if you believe from the evidence in the case that the said Crockett B. Ragsdale made the note and mortgage under which the plaintiff claims for the purpose of defrauding any person to whom he could sell the same and had no definite cattle in mind when the same was made and the description in said mortgage of the cattle therein does not suit and was not intended for the cattle which were afterward taken by the plaintiff under the writ of replevin, then the verdict should be for the defendant."

It is contended that this instruction is at variance with the law as declared by this court when this case was here on former appeal, and it is pointed out that this court said: "The evidence tends to show that the lot of cattle in suit belonged to Crockett Ragsdale and were at the date of the mortgage on feed in Audrain county. Until he produces some evidence that he had another lot of cattle filling that description, and that it was the lot covered by the mortgage, and should have been taken under the writ instead of this lot, the description will be held to refer to this lot. He can not be heard to say that the description is so vague as to be meaningless, as long as the evidence shows a lot of cattle to which it may apply, nor can any one holding possession under his title make a similar objection." [Bank v. Ragsdale, 158 Mo. l. c. 680.]

But it must be observed that this was said with respect to the record then before the court. Then the plaintiff's side of the case was alone before the court, the plaintiff had suffered a nonsuit because the trial court had excluded the note and mortgage on the ground that no title had passed to Latimer or the plaintiff under the mortgage, and then it appeared that Clarence was claiming title to the cattle under Crockett and not adversely to him, as is now the case. What was then said was with reference to Crockett and those claiming under him, and has no application to the state

of facts disclosed by this record, from which it appears that Clarence claims that he owns the cattle and that Crockett never owned them.

In fact the position now taken by Clarence was anticipated in the second paragraph of the opinion on former appeal (158 Mo. l. c. 680) where it was said: "There was an attempt on the part of the plaintiff to prove that Clarence Ragsdale, after he was informed of the mortgage and the unauthorized use of his name in the transaction, ratified it. However relevant testimony of such fact might be in rebuttal, if there should be proof on the part of defendant tending to show title in himself, it was immaterial as long as plaintiff was claiming only the title of Crockett Ragsdale. If the case had reached the point where there was evidence tending to show title in defendant, and plaintiff was claiming that title also, or claiming in spite of it, then proof by defendant that his indorsement on the note was not genuine, and counter proof by plaintiff of the supposed acts of ratification, would come in place. But the trial had not reached that stage when the instruction that plaintiff could not recover was given."

The conditions here foreshadowed are present in this record. Clarence is now claiming title hostile to Crockett's. He is not claiming title under Crockett, and is not estopped to claim title in himself, nor is he estopped from claiming that these cattle were not the cattle covered by the mortgage, as he would have been if he had indorsed the note and transferred the mortgage and uttered them in the commercial world.

The simple question involved in this case is, did these particular cattle belong to Crockett or to Clarence? for there is no pretense of any other outstanding title. If they belonged to Crockett and not to Clarence, then it is none of Clarence's concern whether the description in the mortgage fits the cattle in controversy or not; nor whether Crockett had these particular cattle in mind when he made the mortgage or not; nor whether Crockett intended to defraud any one or not. It would not lie in Clarence's power to litigate such

questions.   On the other hand, if the cattle belonged to Clarence, then Crockett had no power or right, without Clarence's consent, to mortgage them, nor would it be at all material what Crockett's motives were if he did so mortgage them without authority.

The sixth instruction given for the defendant was, therefore, clearly erroneous, in that, it told the jury to find for the defendant if they believed the note and mortgage were made by Crockett for the purpose of defrauding any person to whom he could sell the same, and if Crockett had no definite cattle in mind when the same was made, and if the description in the mortgage did not suit and was not intended for the cattle taken under the writ of replevin.

No such questions could be litigated or settled in this case, and no such issues could possibly arise in this case.   The plain, simple question to be settled in this case is whether the cattle belonged to Crockett or to Clarence, and Crockett's fraud or his intention or motive, or whether the description in the mortgage fit or not, was wholly immaterial, and only served to cloud the issues and confuse the jury.   True, in replevin a plaintiff must recover on the strength of his title and not on the weakness of his adversary's.   But this principle can not support this instruction, for if the cattle were Crockett's he can not be heard to say he intended a fraud in mortgaging them, and, as was pointed out on former appeal, he can not say the description of the cattle contained in the mortgage does not fit this lot of cattle, and as Clarence claims by a hostile title in his own right and not under Crockett, it is wholly immaterial whether Crockett intended to perpetrate a fraud or had these cattle in mind, or whether the description fits or was intended to fit these cattle or not.   Furthermore, there is no pretense in this case that there was any outstanding title in any third person, which was superior to Crockett's or Clarence's (whichever was the owner) to which this principle or law could apply in this case.

## II.

What has so far been said is quite as applicable to the fifth instruction given for the defendant and assigned as error. That instruction is as follows:

"The court instructs the jury that if the mortgage dated December 13, 1895, and read in evidence, was not intended at the time it was given by said C. B. Ragsdale to cover the cattle afterward taken by the plaintiff under the writ of replevin, then you will return a verdict for the defendant regardless of the ownership of the cattle at the date of the mortgage. And you are further instructed that if the said C. B. Ragsdale intended by said mortgage to cover one hundred and twenty head of cattle there on feed and being fed by his brother, the defendant, or any other cattle not the one hundred head bought of Smith by defendant and part of the yearlings bought of E. Hughes by defendant, then you will return a verdict for the defendant."

The error pointed out in the sixth instruction for the defendant is more glaring in this fifth instruction, in that, it told the jury that they must "return a verdict for the defendant regardless of the ownership of the cattle at the date of the mortgage," if they found that Crockett did not intend by the mortgage to cover these cattle.

In other words, even if the jury found that the cattle seized under the writ of replevin in this case belonged to Crockett and not to Clarence, still the verdict must be for the defendant, Clarence, if Crockett did not intend the mortgage to apply to these particular cattle. This is squarely in the teeth of the law as declared by this court on the former appeal, and in addition makes Crockett's intention, not even expressed or vaguely hinted at in the mortgage, operate as the determining factor in respect to the validity and application of the mortgage to the subject-matter covered by the mortgage. Notes and mortgages would cease to be of much value in the commercial world if their validity

or application depended upon such unexpressed intentions of the makers.

These conclusions necessarily result in reversing this judgment and remanding this cause, and the case might be allowed to rest here, but as it has already been twice before this court, and to make the way clear for a correct legal trial of the case hereafter, it is deemed proper to say in addition to what has been said, that evidence as to whose money paid for the cattle in question, was properly admitted as bearing directly upon the question of the ownership of the cattle. So also the state of the account between Crockett and Clarence was also admissible for the same purpose. Not as tending to create a lien upon or to pass title to the cattle to Clarence in the event it should turn out that Crockett was in debt to Clarence at the time these particular cattle were purchased, but as bearing on the question of whose money paid for these particular cattle. To illustrate: If Crockett was in debt to Clarence and sent him money, it might have been intended to discharge the debt and not to be invested for him in cattle. On the other hand, if Crockett was not in debt to Clarence and sent him money, it could not have been to discharge a debt, but must have been for some use beneficial to Crockett. The court should have admitted the checks, offered by the plaintiff, drawn by Clarence and paid by Crockett, because they had a bearing upon the state of the account between them, and might have the effect of showing that even if all Clarence said with respect to the work and labor done and material and corn furnished by him to Crockett, and notwithstanding the alleged loss on account of the Johnson cattle "bargained" by Clarence to Crockett, still Crockett was not in debt to Clarence. Remembering always that all such testimony at last is only useful in this case as bearing upon the question of the ownership of the cattle and not otherwise. The court did not commit error in refusing the instruction asked by the plaintiff to the effect that the defendant's actions and statements to Latimer and others, after the arrest of Crockett, con-

stituted an estoppel.   Those actions, conduct and state-
ments are very strong evidence as bearing upon the
question of ownership, but they do not amount to an
estoppel against the right of the defendant to assert
title to the cattle, for the simple reason, that neither
Latimer, nor the plaintiff, nor any one else, parted with
any money or thing of value, nor changed their po-
sition with respect to these cattle, nor were they in any-
wise damaged by reason thereof.   The status of all the
parties was at that time fixed and was not changed
thereafter by reason of any such acts or statements of
Clarence.   The cattle were then in Clarence's posses-
sion and they remained there until seized under the writ
in this case.   To constitute an estoppel *in pais,* three
things must concur: first, an admission, statement or
act inconsistent with the claim afterward asserted and
sued on; second, action by the other party on the faith
of such admission, statement or act; and, third, injury
to such other party resulting from allowing the first
party to contradict or repudiate such admission, state-
ment or act.   [Taylor v. Zepp, 14 Mo. 482; Newman v.
Hook, 37 Mo. 207; Garnhart v. Finney, 40 Mo. 449;
Bank v. Frame, 112 Mo. 502; Johnson-Brinkman Co.
v. Railroad, 126 Mo. 344; DeBerry v. Wheeler, 128 Mo.
84.]

The fourth instruction given for the defendant is
erroneous.   If Clarence "bargained" the Johnson cat-
tle to Crockett, and if Crockett did not take them and
pay for them, it would be true as stated in this instruc-
tion that the title to the cattle would not pass to Crock-
ett, and Clarence would have a right to sell the cattle
and the proceeds would belong to Clarence, and if those
proceeds were used to pay for the cattle in dispute here,
that would be competent evidence bearing upon the ques-
tion of ownership.   But it is not true that if Crockett
had taken up the mortgage for $2,100 on the Johnson
cattle that he would forfeit that claim or amount, nor is
it true that if Crockett failed to take and pay for these
cattle as and when his contract specified, that Clarence
had a right to hold them for six months, incur the ex-

pense of feeding them for that length of time and then hold Crockett for such expense or loss, if the price of cattle had depreciated in the market. If Crockett was guilty of a breach of his contract in failing to take and pay for the cattle, Clarence was only entitled to the difference between the contract price and the market price of the cattle at the date of the breach or at any rate within a reasonable time thereafter, at the place designated for the delivery. [Rickey v. Tenbroeck, 63 Mo. l. c. 567; Lumber Co. v. Warner, 93 Mo. l. c. 386; Warren v. Mfg. Co., 161 Mo. 112.]

There was no error in defendant's seventh instruction which told the jury that the admissions made by defendant after Crockett's arrest did not create a lien or mortgage on the cattle in plaintiff's favor, and that notwithstanding such admissions the jury should find for the defendant if the cattle were not the property of Crockett. If so advised the plaintiff could have asked an instruction explaining to the jury that such admissions were competent evidence bearing upon the question of whether Crockett or Clarence owned the cattle, and should be considered by the jury in arriving at their verdict. This would have placed the whole matter properly before the jury. The plaintiff did not ask such an instruction, however, and therefore is in no position to complain that the defendant's instruction did not cover the whole law applicable to that matter. [Tetherow v. Railroad, 98 Mo. 74; Hall v. Hall, 107 Mo. 101; Mitchell v. Bradstreet, 116 Mo. 226; Nolan v. Johns, 126 Mo. 159; Warder v. Henry, 117 Mo. 530; Quirk v. Elevator Co., 126 Mo. 279; Railroad v. Randolph Town-site Co., 103 Mo. 451; Doyle v. Railroad, 113 Mo. 280.] Instructions which are good as far as they go but do not cover the whole case, amount, in civil cases, only to non-direction and not to error, and it is the duty of the other party to ask proper instructions to supply the shortcomings of those asked by his adversary. For these reasons the judgment of the circuit court is reversed and the cause remanded for trial in conformity herewith. All concur.