## HARVEY VAN VERTH, Respondent, v. LOOSE-WILES CRACKER & CANDY COMPANY, Appellant.

**Kansas City Court of Appeals, April 3, 1911.**

1. **MASTER AND SERVANT: Safe Place to Work: Obstructed Passageway: Vigilant Care.** Plaintiff was employed in carrying a kettle of hot melted sugar a distance of fifteen feet to a "depositor." While walking backwards in a space of seven feet, he tripped against a "cream-tub" used in the business which had been moved (whether by an employee in his own or an adjoining department did not appear) from its usual position so as to protrude into the passageway. Plaintiff fell backwards, and the hot sugar spilled over him, burning him severely. The foreman had an unobstructed view of the passageway clear through to the "depositor." Plaintiff tried the case on the allegation that defendant negligently failed to keep the place reasonably safe. *Held*, reasonable care under these circumstances meant such care as was commensurate with the dangers of the employment, and it was the duty of the defendant, through its foreman, to exercise vigilant care to see that at all times the passageway was free from such obstructions as might cause plaintiff to stumble and fall.

2. **———: ———: ———: Jury Question.** Where the foreman was in a position to know, if vigilant, whether the passageway was clear or not, it was for the jury to say whether a reasonable length of time had elapsed for him to have discovered the obstruction and removed it, before the happening of the injury.

3. **———: ———: ———: When Immaterial by Whom Obstructed.** Where the act charged is not the doing of a wrongful act, but the omission to perform a lawful duty, the master is liable for failure to keep a passageway reasonably safe, whether its condition of unsafety was produced by the act of a servant in the same department or in an adjoining one from that in which plaintiff was working.

4. **WITNESSES: Depositions: Right to Inspect: Testing Memory.** The trial court refused to allow defendant the right to cross-examine plaintiff as to his recollection of what he stated in a deposition which he had previously given in the case, without first having read the deposition to him. *Held*, that the rule that before a deposition can be used to impeach a witness, he must first be given an opportunity to inspect it, applies also where the purpose is only to test the memory of the witness.

Appeal from Jackson Circuit Court.—*Hon. Herman Brumback,* Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* and *H. M. Langworthy* for appellant.

*Guthrie, Gamble & Street* and *James M. Rader* for respondent.

BROADDUS, P. J.—This is an action by plaintiff to recover damages sustained by him while in the employment of the defendant. He recovered a verdict and final judgment for four thousand dollars, and the defendant has appealed to this court.

The defendant was engaged in manufacturing candies at Kansas City, Missouri. The plaintiff was about seventeen years of age at the time of his injury, which occurred about four o'clock in the afternoon of the 16th of October, 1906. He had been engaged in the same kind of work on the third floor of defendant's plant about three months and had become familiar with the manner in which it was done. Part of his work consisted in aiding another employee to carry kettles of melted sugar, used in making candy, from the boiling kettle and pouring it into another machine called a "depositor," used in moulding the candy into shapes. He was so engaged when he received his injury.

The kettles used for carrying the melted sugar from the boiling kettle to the depositor had a stiff and stationary handle on each of its two sides. Plaintiff would take hold of the handle on one side, another employee hold of the handle of the opposite side, and in this manner they would carry it from the boiling kettle to the depositor. In going from the boiling kettle to the depositor, a distance of fifteen or twenty feet, they passed along an aisle, one of the two walking backward and the

other forward, until they reached the place to deposit. Generally plaintiff did the walking backward.

In making the trip during which plaintiff received his injury, he struck his right foot against a "cream tub" used in the business, fell backward, and the pot of melted sugar spilled over his abdomen and legs, burning him.

There were several allegations in defendant's petition charging negligence, but it was tried on the one alleging that defendant failed to keep the place in which plaintiff was required to, do the work *reasonably* safe.

The cream tub against which plaintiff struck his feet and which caused him to fall, was box-shaped and stood upon castors so it could be rolled about from place to place. It was about eighteen inches high, two feet wide and four feet long. The passage way mentioned was about seven feet wide. The cream tub .was usually left close to one side of this passageway, when not in use. The plaintiff testified that at the time of his injury this cream tub was about in its usual position, except one of its corners protruded into the passageway. Immediately before the injury plaintiff had passed up and down the aisle several times, and he testified that the cream tub was not out of its usual position the last time he passed, and he did not know how it got where it was. There is no testimony going to show by whom or how it became displaced. It must have been placed thereby some of defendant's employees, as it was not shown that any strangers were around.

The third floor where plaintiff was injured contained six departments or branches of the business, viz: The crystalizing, the French cream, the chocolate, the caramel, the packing, and the cold storage department, each with a separate foremen, and doing separate work. The plaintiff was in the French cream department, and the foreman in charge at the time was Orville Dome. The floor of this story was about 75 feet wide by 150 feet long. In the department in which plaintiff was en-

gaged there were six men. There was what is called a candy slab on one side of said passageway, at which the cream tub rested when not being used. This candy slab was a part of the dividing line between the French cream department and the chocolate department. There were six men employed also in the latter department.

It was shown that Dome was the person who drew the contents from the boiling kettle and deposited it in the dumping kettle and Earl Marksbury was the person who helped carry the dumping kettle.

Plaintiff testified that just before his injury some of the members of the chocolate department were working on said slab, but he did not know whether any one was so working on it at the time of his injury. Plaintiff stated that after having carried the last kettle of melted sugar, previous to the one he was carrying when he fell, in returning to the boiling kettle he did not go through said passageway but after getting a drink of water he passed along by way of the north wall of the room and then east; that Marksbury, however, returned through the passageway; and that Dome from the position he occupied at the boiling kettle, had an unobstructed view of said passageway to the depositor.

During the cross-examination of plaintiff he was asked that, if in his deposition that had been taken in the case he had not made certain material statements. Objection was made to the competency of the question on the ground that as the deposition was on file the proper way was to read to the witness the deposition and then question him. Defendant's counsel explained that the object was not for the purpose of impeachment, but for the purpose of testing his recollection. The court sustained the objection.

Neither Marksbury, Dome, nor any other person who could have known who changed the position of the cream tub was introduced as a witness. The defendant introduced no evidence and asked the court to direct a

verdict in its favor at the close of plaintiff's testimony, which the court refuse to do.

We think it was sufficiently shown that plaintiff's injury was caused by being tripped by the cream tub, that had been moved by some one from its usual position near the candy slab, so as to protrude into the passageway used by plaintiff and his helper, Marksbury.

The plaintiff's injuries were of a very distressing nature and to some extent permanent, and his suffering was great.

The position of plaintiff is that: "Defendant's duty to keep the place where plaintiff was working safe was non-delegable and continuing, and that it is responsible to plaintiff, regardless of who produced the unsafe condition, or the length of time it had existed, since it must have been produced by some employee."

We cannot admit the position of respondent as a just definition of the duty the master owes to his servant. It is true that it is the duty of the master to furnish his servant a reasonably safe place in which to do his work and that duty is a continuous one, but we are not prepared to admit in the broad terms with which it is expressed that the master is liable for its unqualified safety regardless of who produced it. The master is only required to exercise reasonable care to furnish and keep the servant's place for doing his work reasonably safe; and it can make no difference by whose agency, other than that of the servant himself, its condition has been changed from safety to unsafety.

It would be hard law for the servant who was injured by reason of his place being rendered unsafe by the act of a fellow-workman, or by any other person, to deny him redress at the hands of his master; and it would be equally hard law to hold the master unconditionally liable for the act of the servant under such circumstances.

The object of the law is to protect the rights of master and servant alike, and it is made to meet the

varying emergencies which may arise when the rights, duties and liabilities of the relation become a matter for judicial investigation.

As a general rule, the master is not liable to a servant for the wrongful act of a fellow-servant. But there are exceptions to this general rule as we have stated. Speaking of the general rule it is said that: "Guided by the real reason for the rule it seems to us it should be applied and applied only in those cases where the servant injured and the one inflicting the injuries are so associated and related in their work that they can observe and have an influence over each other's conduct, and can report delinquencies to a common correctory power or head."

This distinction was made between railroad section hands engaged in ballasting the railroad track with stone which was hauled to them on a construction train, and unloaded by the trainmen. The holding being that the two groups of men were independent of one another, working under different foremen, and therefore not fellow-servants. [Parker v. Railroad, 109 Mo. 362.] The theory of that case was repeated in Koerner v. St. Louis Car Co., 209 Mo. 141.

The rule as expressed in Parker v. Railroad was denominated "that department service" and criticised in Grattis v. Railway, 153 Mo. 380, but it is reasserted as we have seen in Koerner v. Railway, supra, and may now be considered as the law of the state.

But we cannot see what difference, practically speaking, the distinction can make in this case, as it was not shown that the cream tub was misplaced by any of the employees of the adjoining department; at most it was only a possibility that such was the case; and, secondly, it is immaterial as we look at the matter, for the master would be liable for failure to keep the passageway reasonably safe, whether its condition of unsafety was produced by the act of a servant in the department in which plaintiff was serving, or by a ser-

vant in the adjoining service department. The act charged is not the doing of a wrongful act, but the omission to perform a lawful duty.

And it was ·upon this theory that the court submitted the case upon instructions "C and D" given at the instance of the defendant. They read as follows: "Although you may believe from the evidence that the cream tub, referred to in the testimony, had at the time of the accident been moved from its accustomed place, if any, yet, unless you shall further believe from the evidence that the defendant company was aware of such removal, or that such removal had existed for such length of time as would have enabled the company, by the exercise of ordinary care, to have become aware of that fact and removed it before the happening of the accident to plaintiff, you should return a verdict in favor of the defendant.

"Although you may believe from the evidence that, at the time of plaintiff's injury, the cream tub, referred to in the testimony, had been moved from its accustomed place, if any, and that by reason thereof plaintiff stumbled against the same, causing him to fall and be burned; yet, if you are 'unable to determine from the evidence how or by whom said tub was so moved, and whether it had been so moved such length of time to have enabled the defendant company to have become aware thereof and removed it, before the accident, you should return a verdict in favor of the defendant company."

The labor in which plaintiff was employed of carrying a kettle of hot melted sugar, a distance of fifteen feet, while walking backwards in a space of seven feet, was of a very dangerous nature. Therefore, the duty of the defendant was to exercise vigilant care to see that at all times it was ·free from such obstructions as might cause plaintiff to stumble and fall. Reasonable care under these circumstances meant such care as was commensurate with the danger of the employment. And

we do not think that we would be overstepping the rule
in saying, that it required of defendant's foreman, that
he should be constantly vigilant in the performance of
his duty in that respect. It is true, that but a few min-
utes had elapsed since the passageway had been free of
obstruction, but when we take into consideration the
hazardous nature of the business, the number of the em-
ployees engaged at work, and the passing and repassing
that would necessarily occur, the defendant should not
have relaxed in its vigilance to secure plaintiff's safety.
Dome, the foreman, was in a position to know, if vigi-
-lant, whether the passageway was clear or not, and it
was for the jury to say whether a reasonable length of
time had elapsed for him to have discovered the obstruc-
tion and removed it, before the happening of the injury
to plaintiff.

We agree with defendant that where the master fur-
nishes his servant a reasonably safe place in which to
work, he is not liable for a transitory danger, arising
out of a single occurrence in which he is not in fault,
and of which he has had no notice or opportunity to
correct. [Redmond v. Railroad, 225 Mo. l. c. 739.] In
that case it is held the length of time in which a danger-
ous condition existed is not material except as an indi-
cation that the master knew it. The notice and oppor-
tunity to correct a source of danger are not matters to
be measured by any particular period of time, but as a
rule is a question of fact for the jury. What in one
instance, under the circumstances, might require hours
or days, in another under different circumstances might
only require minutes.

And the principle we have invoked in this case is
not unlike the well established rule, that it is the duty
of a city to exercise ordinary care to keep its sidewalks
and streets in a reasonably safe condition for the use
of persons walking thereon, and where the city must
have had actual notice of the defect before the accident,
or the defect must have existed a sufficient length of

time thereto, to justify the presumption that it did have notice of the defect in time to have repaired it before the accident. There is a difference, however, in the application of the rule in that defects in a street or sidewalk may exist for days before it can be reasonably expected that the city's officers may discover them, and they are of such a nature generally, that it requires more or less time to repair them; whereas a business corporation is always present or assumed to be present by some agent or officer while conducting its business, and if the appliance or place, furnished the workman is unsafe and the danger apparent and the remedy at hand, time is not a matter of much consequence in fixing its liability for failure to cure the defects at once. The law in such case requires the utmost promptness, which is the equivalent of reasonable care. The rule would be different if the defects were such as required inspection to ascertain conditions, and time required to remedy them. The facts of every case are the factors by which the courts measure the responsibility of the master.

We do not think the plaintiff was guilty of such contributory negligence as precluded his right to recover. We have stated the leading features of his testimony, and it seems to us that he was in the exercise of usual care, that is, he was performing his labor as had been his custom and that he would not have been injured had it not been for the obstruction.

The action of the court in refusing defendant the right to cross-examine plaintiff as to his recollection of what he stated in a deposition he had given in the case, without first having read the deposition to him, is assigned as error.

The admitted rule is that before a deposition may be used to impeach the witness he must first be given an opportunity to inspect it, but it is insisted that it is otherwise when the purpose is only to test his memory. But we think not. "A deposition stands upon precisely

the same footing in this regard, as other written documents, and the rule is in impeaching the credit of a witness by proof of contradictory written statements, that the writing if in existence, must be first produced and shown to the witness, and if admitted to be his, counsel cannot enquire of witness whether or not certain statements are in the instrument, but the instrument itself must be read in evidence." It seems to us that there can be no difference in the rule whether the purpose is for impeachment, or for testing the memory of the witness.

We do not believe the judgment is excessive under the evidence. Believing that the case was properly tried and that the judgment was for the right party, it should be affirmed.

Affirmed. All concur.