JOHN JOHNSON, Appellant, v. THE KANSAS CITY BOLT AND NUT COMPANY, Respondent.

Kansas City Court of Appeals, May 19, 1913.

1. MASTER AND SERVANT: Negligence: Reasonable Care: Obstruction. The plaintiff sued to recover damages for injuries sustained by being run over by the defendant's two-wheeled iron truck or "buggy." The plaintiff was a member of a gang of workmen called "hot shearmen" in the defendant's mill. It was his duty to wheel the iron onto the scales and to pick up all pieces that fell from the truck or "buggy" as he passed along. The plaintiff and the foreman were taking the first load to the scales in the morning, when the plaintiff stumbled over a piece of iron that was lying in the passageway from the previous day, and the truck ran over his leg and crushed it. Held, that the jury were justified in concluding that it was negligence on the part of defendant to allow a dangerous obstruction to remain in the passageway from one working day to another.

2. ——: ——: ——: ——. The act charged in the petition and shown by the evidence of the plaintiff to have caused the injury was not the wrong of fellow-servants in failing to obey the defendant's orders, but the omission of the defendant to perform its duty to exercise reasonable care to discover and correct that wrong.

Appeal from Jackson Circuit Court.—Hon. J. H. Slover, Judge.

REVERSED AND REMANDED (with directions).

*F. M. Kennard* and *M. J. O'Donnell* for appellant.

The work in which plaintiff was engaged was of the most dangerous character and the law required care commensurate with that danger to keep the runway free from obstructions and required defendant not to order plaintiff to draw the truck over and along same without first ascertaining its condition, and for neglecting so to do defendant is liable. Van Werth v. Cracker Co., 155 Mo. App. 299; Parker v. Railroad, 109 Mo. 362; Koerner v. Car Co., 209 Mo. 141.

*Rees Turpin* and *Jas. E. Taylor* for respondent.

(1) There is no evidence as to when or how this piece of iron came upon the floor nor is there a particle of evidence tending to show negligence on the part of the respondent in not discovering it sooner. Nickerson v. Railroad, 144 Mo. App. 401; Spencer v. Brunner, 126 Mo. App. 94; Williams v. Railroad, 119 Mo. 316. (2) Nothing was done out of the usual course of business and there is nothing to show that the usual course was improper. Saversnick v. S. & S. Co., 141 Mo. App. 509; Halloran v. Pullman Co., 148 Mo. App. 243; Anderson v. Box Co., 103 Mo. App. 382; Wendall v. Railroad, 100 Mo. App. 556. (3) It would be most unreasonable to require the master to keep a special watch over every employee. Ring v. Railroad, 112 Mo. 231; Meehan v. Railroad, 114 Mo. App. 404.

JOHNSON, J.—This is a master and servant case. Plaintiff had his leg broken while working at the rolling mills operated by defendant in Kansas City and alleges that his injury was caused by defendant's negligent failure to exercise reasonable care to provide him a reasonably safe place in which to work. Contributory negligence and assumed risk are pleaded in the answer as special defenses. The jury returned

a verdict for plaintiff in the sum of five thousand dollars but the court sustained defendant's motions for a new trial and in arrest of judgment on the ground "that the court erred in not sustaining defendant's demurrer at the close of plaintiff's evidence." Plaintiff appealed and contends that his evidence was sufficient to take the case to the jury and, therefore, that the demurrer was properly overruled. In such state of case we must view the evidence of plaintiff in its light most favorable to the pleaded cause of action.

Plaintiff had been working almost a year at the mills and at the time of his injury was a member of a small gang of workmen called "hot shearsmen." There were two sets of rolls in the mill and separate gangs of shearsmen under different foremen were assigned to the shears for each set. Iron was brought from the rolls to the shears and cut into different lengths. A two-wheeled iron truck or "buggy" as it was called was used to carry loads of the cut iron to the scales. Each truck weighed 700 to 800 pounds and when loaded weighed from 2500 to 3000 pounds. It was provided with handles in front and was drawn by two shearsmen who while drawing it from the shears to the scales walked between the handles and the wheels, facing the direction the vehicle was going. There was a narrow runway along the west side of the building which the trucks from both shears used in going to the scales. This runway had an iron floor and was a little wider than the trucks. The process of shearing produced a great deal of waste or scrap iron which, at times, would be loaded on a truck by the shearsmen and taken to the scales. Occasionally pieces of scrap iron thus moved would drop from the truck on the runway and it was the duty of the men pulling the truck to pick up such pieces in order that the way might be kept clear of obstructions. One of plaintiff's witnesses, an iron inspector, testified: "If iron drops on the tracks from the trucks it is supposed to be picked

Johnson v. Bolt & Nut Co.

up by the hot shearsmen; they are supposed to pick up all the iron that is sheared and put on the buggies to haul it to the scales—it is their business to keep the iron cleaned away." Counsel for plaintiff tried to show by this witness that defendant had other laborers go over the runway after the shearers had quit work and pick up fallen pieces of iron but the witness made it quite clear that each gang of shearsmen cleaned up after its own truck and left no iron on the runway for anyone else to remove.

The injury occurred on Monday morning shortly after work was begun in the mill. A load of iron was started from the shears at which plaintiff was working to the scales and the foreman of the gang and plaintiff went with the load. While drawing it along the runway plaintiff stumbled on a bent piece of scrap iron that had been-left in the runway and fell. The truck wheel passed over his leg and crushed it. There is evidence tending to show that the piece of iron had come from the other shears and must have been dropped on the preceding Saturday and overlooked by the shearsmen whose duty it was to pick it up. The morning was foggy and dark and it appears that the obstruction was not plainly visible. At any rate plaintiff did not see it, though, according to his statement, he was in the exercise of reasonable care.

Because of the earnest and, we think, sincere insistence of counsel for defendant that the evidence fails to show where the piece of scrap iron came from and when it was dropped, we shall refer to some of the details of the evidence bearing on those subjects.

The day's work began at seven o'clock in the morning and the injury occurred shortly after that hour and while the first load of cut iron was being taken from the shears in mill No. 2, which were the shears at which plaintiff was working. No load had gone from the other mill to the scales and there was no scrap to be hauled for the reason that the mills

had not been running long enough that morning for scrap to have accumulated and the scrap from Saturday's operations had all been removed in the afternoon of that day. There was a difference in the iron turned out by the respective mills and one of the witnesses identified the piece of scrap as belonging to the iron run through the shears of the other mill.

From these facts we think the inference is fairly deducible that the obstruction had fallen from the truck of the other mill in the afternoon of the preceding work day and that the shearsmen in charge of that truck had negligently allowed it to remain where it had fallen.

Further it appears that both master and servants recognized the presence of such obstructions in the runway as a menace to the safety of the shearsmen drawing such heavy and unwieldy loads through an ill-lighted passageway. The strict orders of the master requiring each set of shearsmen promptly to pick up any scrap that might fall from their truck shows what the master thought of the necessity of keeping the passageway clear. The jury were entitled to infer that such order was but an exercise of reasonable care. We are willing to concede for argument that the members of the two sets of shearsmen were fellow-servants and, therefore, that the act of leaving the dangerous obstruction in the runway was negligence of fellow-servants of plaintiff, for the consequences of which defendant would not be liable. But this concession does not settle the case in favor of defendant. A master does not discharge his full duty towards his servant by merely prescribing a method of work which if properly performed by other servants would maintain a reasonably safe place for such servant. The duties of mastership include those of reasonable supervision and inspection to see that the work is being properly done and plaintiff was entitled to the protection of the proper performance of that duty. The

master is not supposed to stand over every servant and see that every act of service is properly performed and is not presumed to be present in law when a servant is guilty of negligence that injures a fellow-servant and it is for that reason that the master is not held liable for an injury to a servant, the proximate cause of which is negligence of a fellow-servant; but where such negligence is superseded in the chain of causal events by a negligent failure of the master to discover and rectify the dangerous condition produced by the wrong of the fellow-servant, the latter wrong becomes the remote cause of an injury inflicted after the master himself has thus been negligent. The act charged in the petition and shown by the evidence of plaintiff to have caused his injury was not the wrong of fellow-servants in failing to obey defendant's orders but the omission of defendant to perform its duty to exercise reasonable care to discover and correct that wrong. [Van Werth v. Cracker & Candy Co., 155 Mo. App. 299.] It was a question of fact for the jury to determine as to whether or not the obstruction had remained in the passageway a sufficient time for defendant in the exercise of reasonable care to have discovered and removed it before the injury. Reasonable care means care commensurate with the dangers of the employment. What would be reasonable care in one case might be gross negligence in another. Taking all of the circumstances of the present case into consideration we hold that the jury were justified in concluding that it was negligence of defendant to allow a dangerous obstruction to remain in the passageway from one working day to another. The court did not err in overruling the demurrer to the evidence but did err in granting a new trial.

The judgment is reversed and the cause remanded with directions to enter judgment on the verdict. All concur.