A. J. HAWKINS, Respondent, v. SAINT LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, March 12, 1915.

1. **APPEAL AND ERROR:** Review of Denial of Peremptory Instruction: Evidence, How Considered. Where defendant was refused a peremptory instruction the appellate court in reviewing such refusal considers the evidence in the light most favorable to plaintiff.

2. **MASTER AND SERVANT:** Personal Injuries: Evidence Reviewed. Action by assistant general foreman at defendant's roundhouse for personal injuries. Evidence reviewed and it is considered thereunder that a peremptory instruction asked by defendant was properly refused, it not being established that plaintiff was bound to inspect the roundhouse to ascertain if tools had been left lying on the floor by other employees.

3. **FEDERAL EMPLOYER'S LIABILITY ACT: State Laws Super-seded by.** Since the passage of the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, ch. 149) as amended April 5, 1910 (36 Stat. at L. 291, ch. 143) U. S. Comp. Stat. 1913, secs. 8657, 8665, all State laws upon the subject are superseded and the decisions of the Federal courts with respect to the construction and operation of the act control.

4. **MASTER AND SERVANT: Federal Employers' Liability Act: Federal Courts' Rulings.** Under rulings of the Federal courts as to the assumption of the risk, an employee assumes the risk of dangers normally incident to the employment in which he voluntarily engages so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a reasonably safe place to work and reasonably suitable and safe appliances for the work.

5. ————: **Injuries: Negligence: Assumption of Risk.** Action by assistant general foreman of defendant's roundhouse for injuries occasioned by stumbling over a jackscrew left on the floor of a dark passage in said roundhouse. The plaintiff cannot be *held* to have assumed the risk of the injury, merely because he knew the master had not properly lighted the roundhouse. He did not know of the presence of the jackscrew negligently left on the floor and the question was properly left to the jury.

6. ————: **Contributory Negligence.** Contributory negligence on the part of an employee is a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use.

7. ————: ————: **Assumption of Risk: Finding of State Courts As to: Not Molested by Federal Courts.** Federal courts in decisions under the Federal Employers' Liability Act do not change or purport to change the decisions and holdings of the various State courts regarding assumption of risk and contributory negligence.

8. ————: **Negligence: No Federal Law On: State Law Controls.** There is no Federal law on negligence; the Federal courts apply the law of the State where the injury occurs.

9. ————: **Place of Work: Master's Duty Concerning.** It is the duty of the employer to exercise ordinary care to furnish the employee a reasonably safe place in which to do the work required of him, regard being had for the nature and character of the work.

10. ————: **Personal Injuries: Jury Question.** Action by servant for injuries received from stumbling over a jackscrew left

lying on the floor in the roundhouse where the plaintiff was at work. Evidence reviewed and considered sufficient to make a question for the jury whether or not the jackscrew had remained on the floor a sufficient time for defendant in the exercise of reasonable care to have discovered and removed same before the injury occurred.

11. APPEAL AND ERROR: Theory of Case in Trial Court: Not Changed on Appeal: New Questions Not Allowed. A party cannot on appeal change the theory on which he tried his case below and inject new questions into it.

12. INSTRUCTIONS: Nondirection: Not Reversible Error, When. Instructions which are good as far as they go, but which do not cover the whole case, amount in civil cases merely to nondirection and not to error. A duty rests upon the opposing party to request proper instructions and if he does not do so he cannot complain that the instructions did not cover the whole case.

13. ————: Master and Servant: Assumption of Risk. An instruction which told the jury that a servant assumes the ordinary risks incident to his employment but does not assume the risks caused by the negligence of the master or his failure to perform his duties to his employees, *held* proper.

14. MASTER AND SERVANT: Personal Injuries: Negligence: Statement. In an action by a servant for personal injuries, facts stated and circumstances considered. *Held* that the question of contributory negligence was properly submitted to the jury.

Appeal from Lawrence County Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*W. F. Evans, Mann, Todd & Mann* for appellant.

(1) The demurrer should have been sustained. Plaintiff was not entitled to go to the jury as to the first specification of negligence, i. e., the failure to properly light the roundhouse, because he assumed the risk of that negligence. This action is governed by the Act of Congress commonly called the Employer's Liability Act, and by the rule of decision prevailing in the Federal courts with respect to the construction

and operation thereof. Under that rule of decision, the servant assumes the risks arising out of a defect in the place at which he works attributable to his employer's negligence, provided he knows (or is presumed from its obviousness to have known) of the defect, and also knows that it endangers his safety (or if an ordinarily prudent person under the circumstances would realize that it endangered his safety. Railroad v. Horton, decided by the United States Sup. Ct. April 27, 1914, reported U. S. Adv. Ops. 1913, p. 635; Railroad v. Hall, decided by the United States Sup. Ct. January 5, 1914, reported U. S. Adv. Ops. 1913, p. 229; Railroad v. Jacobs, 81 S. E. 99; Price v. Railroad, 77 Mo. 509-10; Donovan v. American Linen Co., 61 N. E. 808; Buehner v. Creamery Package Co., 100 N. W. 345; Rich v. Railroad, 166 Mo. App. 390; American Silver Mfg. Co. v. Railroad, 174 Mo. App. 192; McElvain v. Railroad, 176 Mo. App. 382; Sims v. Railroad, 177 Mo. App. 25; Hamilton v. Railroad, 177 Mo. App. 151 and 153; Mondon v. Railroad (U. S. Sup.), 56 L. Ed. 347. (2) There was no showing that the defendant knew that the jack was at the place plaintiff stumbled over it, nor was it shown that the jack had been at said place for such a length of time that defendant had constructive knowledge of its being there. To constitute negligence defendant must have actually known that the jack was where plaintiff stumbled over it, or must have had constructive knowledge. Railroad v. Horton, supra; Railroad v. Swann's Admx., 169 S. W. 888; Wilks v. Railroad, 159 Mo. App. 722; Wojtylak v. Coal Co., 188 Mo. 281; Rowden v. Daniel, 151 Mo. App. 15; Nickerson v. Railroad, 144 Mo. App. 408. (3) Defendant was not guilty of any negligence with respect to the jack being in the place where plaintiff stepped on it, for the reason that plaintiff was the foreman in charge of the premises at the time he was injured. In order to get constructive notice to defendant it had to pass through plaintiff as

a conduit. McCrory v. Railroad, 118 S. W. 710; Linck v. Railroad, 54 S. W. 784; Minster v. Railway, 56 Mo. App. 280; Moore v. Jones, 39 S. W. 593; Railroad v. Snyder, 7 N. E. 607-608; Evans v. Railroad, 62 Mo. 509.

*Fielding P. Sizer* for respondent.

(1) Appellant failed to plead in its answer or prove in evidence that plaintiff knew of the presence of the jack, or that, knowing the absence of the light, he appreciated the danger and appellant cannot avail itself of that defense now. Myers v. Coal Co. (U. S.), 58 L. Ed. 906; Railroad v. Swearinger (196 U. S.), 49 L. Ed. 386. (2) Appellant nowhere pleads that plaintiff assumed any extra hazards due to defendant's negligence, and even handed justice would dictate that this court should try the case on the theory that defendant itself adopted in the lower court. Masters v. Transit Co., 204 Mo. 507-521; Chandler v. Gloyd, 217 Mo. 416; O'Keefe v. Railroad, 124 Mo. App. 619; Cary v. Car Co., 125 Mo. App. 193; Nicket v. Railroad, 135 Mo. App. 671. (3) Because appellant pleaded in its defense of contributory negligence that if the place was not sufficiently lighted, it was plaintiff's duty to provide himself with a torch or lantern and that his failure to do so was contributory negligence, and as contributory negligence does not defeat a recovery under the Employer's Liability Act, the demurrer was properly overruled. Employer's Liability Act, Fed. Stat., 1909, Sup.; Myers v. Pittsburg Coal Co. (U. S.), 58 L. Ed. 584; Peterson v. Railroad, 229 U. S. 146, 57 L. Ed. 1125; Thompson v. Railroad, 205 Fed. 203; Railroad v. Lindsey (233 U. S.), 58 L. Ed. 838. (4) There is sufficient evidence to show knowledge of the presence of the jack, or by ordinary care its presence could have been shown and therefore, was a jury question. Johns v. Bolt Co., 172 Mo. App. 216-217; Myers v. Coal Co. (U. S.), 58 L. Ed. 911.

STATEMENT.—Hawkins sued the defendant rail-road company to recover $30,000 as damages for personal injuries sustained by him while in defendant's employ at its roundhouse in Springfield, Mo. The action was brought under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, Ch. 149; U. S. Comp. Stat. Supp. 1911, p. 1322; Fed Stats. Anno. Supp. 1909, p. 584) as amended April 5, 1910 (36 Stat. at L. 291, Ch. 143; U. S. Comp. Stat. Supp. 1911, p. 1324.) In the petition it was sufficiently averred that defendant was a corporation operating a line of railway as a common carrier in interstate commerce, and that plaintiff at the time he was injured was employed by defendant in such commerce. It was admitted at the trial by the parties that the engine which plaintiff was helping take out of defendant's roundhouse was being taken out preparatory to its run in pulling a freight train carrying interstate commerce, so that these facts were not in issue.

The petition, among other things, states these facts: Plaintiff was assistant general foreman at the roundhouse where locomotives were housed and stalled, his hours being from seven p. m. to seven a. m. every night. On November 17, 1912, plaintiff and a hostler at about 6:40 a. m. went to stall No. 14 to pilot engine No. 1328 out of the roundhouse to the coal chute and water tank. After the hostler had started the engine, plaintiff undertook to walk along by its side in the stall until he could get to a place where he could mount the engine at the step between the tender and engine proper (alleging it was his duty to get on the engine), and while so doing he stepped on a small screw-jack lying on the floor of the roundhouse which rolled under his foot and he was thrown violently forward to the floor and towards the side of the engine, and his arm struck on the rail in front of the driver and was severed between the elbow and the wrist. "Plaintiff states that on account of the darkness in said round-

house caused by the failure of said company to keep same properly lighted and further darkened by the steam and smoke then and there being emitted from said engine and other engines then and there in said roundhouse, he was unable by the exercise of ordinary care, to see said jack, then and there lying upon the floor near the track upon which said engine was being operated. Plaintiff further states that said jack had been left in said position on the day previous by one of the machinists working under the general roundhouse foreman and had not been removed to a place where it would not be dangerous to plaintiff and other workers in said roundhouse doing their duties in the nighttime, and that its position where it was left by the machinist as aforesaid rendered the place where plaintiff and others were required to work in moving and working about said engine unsafe, and that said jack had remained in said position since the day previous, to the knowledge of the defendant, or by ordinary care it could have been known, and its position was not known to plaintiff, and on account of the darkness of said roundhouse it could not be discovered by ordinary care on the part of the plaintiff.''

As stated in respondent's brief, the ground of negligence relied upon in the petition was the failure to exercise care in furnishing a reasonably safe place to work in two particulars: (1) Negligence in failing to properly light said roundhouse so that the light would shine between the stalls and engines, where plaintiff was injured. (2) Negligence in leaving the screw-jack on the floor of the roundhouse near the track where plaintiff was injured.

The answer was, first, a general denial. Secondly, it was averred ''that whatever injuries were received by plaintiff at the time alleged in his petition, were brought about by and were due to plaintiff's own negligence contributing thereto, in that it was the duty of plaintiff as the night foreman in charge of the shops to

represent the defendant in the capacity of vice-principal, and that if there was any negligence in allowing the screw-jack referred to in plaintiff's petition to remain upon the floor of the roundhouse, at the place where plaintiff alleges he stepped upon it, that by reason of the position occupied by plaintiff, said negligence, if any, was the negligence of plaintiff; and further, in that if the said roundhouse was not sufficiently lighted, it was the duty of the plaintiff to have provided himself with a lantern or torch, and that his failure to do so constituted negligence on his part." Thirdly, defendant avers "that if the injuries sustained by plaintiff at the time alleged in his petition were caused by any failure to properly light said roundhouse, so that the light would shine between the stall and the engine where plaintiff was injured, that the same was the result of the usual and ordinary risks of the business of defendant in which plaintiff was engaged in the manner in which it was carried on, and that the consequences thereof and the risks incident thereto were assumed by plaintiff as a part of his employment, for which reason plaintiff is not entitled to recover anything in this action."

The jury returned a verdict for $5000 and defendant has appealed.

## OPINION.

FARRINGTON, J.—Appellant contends that plaintiff was not entitled to have the jury pass on the case as to either of the two specifications of negligence, and that therefore its peremptory instruction should have been given. This has necessitated a review of the evidence, considered in the most favorable aspect to plaintiff. [Myers v. Pittsburgh Coal Co., 233 U. S. 184, 58 L. Ed. 906, l. c. 911.]

Briefly stated, the plaintiff's case is as follows: He was the night foreman at defendant's roundhouse

and it was his duty to merely supervise and superintend such repairs as were necessary to get the "live" engines in shape for their run. Engines that were out of commission and required work other than that incidental to preparing them for service did not come under his supervision; such work was carried on in the daytime and occasionally the daymen would work overtime for a part of the night, but such men would not be subject to plaintiff's control unless he was given special instructions with reference to their work. Plaintiff's testimony is that it was not his duty to inspect the floors and stalls for the purpose of ascertaining that the daymen or the night men had complied with the rule posted in the roundhouse by the defendant that all workmen should put away their tools when they stopped work. The defendant did employ two sweepers whose duty it was to remain in the roundhouse something like an hour after the day shift had left and whose duty it was during their hours to sweep out and pick up anything left on the floor that they should find. As to the engine in stall fourteen, the one in which plaintiff was injured, neither the plaintiff nor his men had any duties to perform about it except to see that it was fired and taken out of the stall and prepared with water and coal; that is, he had no duties with respect to that engine that required him to go into that stall for any purpose other than the purpose for which he did go in when he was injured. There is evidence that work had been done by the daymen on the engine in stall thirteen and that a jack had been in use by the daymen in working on that engine and that the machinist had a "green" helper who was a new man. Plaintiff testified that he worked under the general roundhouse foreman, Burke, and that Burke had not assigned him any duty with reference to going around to see whether workmen had put up their tools and had not furnished him any men to see that it was done.

189MA14

We must therefore hold that defendant's instruction in the nature of a demurrer to the evidence was properly overruled because the testimony fails to show, as defendant contends, that the knoweldge of the presence of the jack negligently being left on the floor must be conveyed to the company through the plaintiff and that it was his duty to inspect and see that the floor at this place was clear of such obstructions.

Other facts material to the discussion will appear throughout the opinion.

With this statement of the pleadings and the evidence in mind, let us examine the sections of the Federal Employers' Liability Act which govern this case.

Section 1 of the act provides, among other things, that every common carrier by railroad while engaging in commerce between any of the States shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce for such injury resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment. Section 3 provides that in actions brought thereunder the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. Section 4 deals with the defense of assumption of risk in such a way as to show that the defense is still good except in certain cases, and this case does not fall within the exception.

"It is settled that since Congress, by the Act of 1908, took possession of the field of the employer's liability to employees in interstate transportation by rail, all State laws upon the subject are superseded." [Seaboard A. L. R. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062.] Therefore, the decisions of the Federal

courts with respect to the construction and operation of the act control. [Sims v. Railroad, 177 Mo. App. 1. c. 25, 163 S. W. 275; McElvain v. Railroad, 176 Mo. App. l. c. 382, 158 S. W. 464.]

Appellant makes the contention that under such decisions ''the servant assumes the risks arising out of a defect in the place at which he works attributable to his employer's negligence, provided he knows (or is presumed from its obviousness to have known) of the defect, and also knows that it endangers his safety (or if an ordinarily prudent person under the circumstances would realize that it endangered his safety).'' As a part of this contention it is argued that plaintiff was not entitled to go to the jury as to the specification of negligence that defendant failed to properly light the roundhouse because he assumed the risk of that negligence. For the purpose of such contention defendant must be held to be admitting that it was negligent and not to be claiming that plaintiff failed to make a prima-facie showing of negligence, but to be claiming that its affirmative defense of assumption of risk was so abundantly established that the court should have directed a verdict for it, thus declaring that defendant had amply sustained the burden of proving that affirmative defense and that plaintiff had not offered sufficient evidence in rebuttal of such defense to make an issue of fact as to which reasonable minds might differ.

The rule of the Federal courts as to assumption of risk is stated in the case of Gila Valley, G. & N. Ry. Co. v. Hall, 232 U. S. 93, 58 L. Ed. 521, l. c. 524: '' 'The true test is not in the exercise of ordinary care to discover dangers, by the employee, but whether the defect is known or plainly observable by him. An employee is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and

comprehend the dangers incident to the use of such appliances.' This, we think, was a correct instruction under the circumstances of the case. An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it.''

It would seem that to one who had read the evidence in this record, in the manner in which one must under the decisions read it when determining whether a peremptory instruction should have been given for defendant, the bare statement of the rule just quoted would be sufficient to overcome appellant's contention. It is neither pleaded nor proven that plaintiff was aware that the jack had been left on the floor of this stall in dangerous proximity to the engine or that it was his duty to be aware of such fact; and the jack was not so plainly observable that he may be presumed to have known of its presence on the floor. The hostler, Clark, went entirely around the engine with one of the lanterns provided by defendant and did not see it. The workmen who went to the stall immediately after the injury with a torch had to hunt for it. There is no

Hawkins v. St. Louis & San Francisco Railroad.

showing whatever that plaintiff "appreciated the danger." We cannot say he assumed the risk of falling over a screw-jack, which was negligently left on the floor of the stall by some employee of the defendant, by proving he knew there was no *light* provided at the front of the stall. The trouble is, he did not know the *jack* was there. The absence of light in the stall was known to plaintiff, but that in itself involved only ordinary risks; added to this was a positive negligent act on the part of the defendant.

In the case of Seaboard A. L. Ry. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, 1. c. 1070, after stating that the act recognizes the distinction between contributory negligence and assumption of risk, the court said: "'The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe

appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them.'' That case was reversed because the trial court and Supreme Court of North Carolina held the defendant conclusively guilty of negligence when it was shown to have failed in some duty prescribed by the State statute which was not prescribed by the Federal act; yet there was evidence in the case that the glass that burst could have been entirely cut off from the pressure and the engine could still have been safely operated by the cocks provided to show the quantity of water; again, that the glass would fly in the engineer's face if it did burst was the reasonable and natural and normal result which could and must have been anticipated. The case we have to decide is taken bodily from that rule because it would not be reasonably anticipated by anyone—although the place was dark—that he would stumble over a jack negligently left on the floor of the stall in violation of the posted rule. What the Supreme Court of the United States held on the question of a servant assuming the risk of the master's negligence must be deduced not only from the general statements on the questions involved in the case last cited, wherein the principal question determined was on the defendant's negligence but we must also read what the same court said on the question in the case of Gila Valley, G. & N. Ry. Co. v. Hall, supra. We understand the law to be as declared in these two cases that the error alleged in the instructions in our case on assumption of risk and contributory negligence becomes nonprejudicial under the facts adduced at the trial.

The Supreme Court of our own State has lately rendered an opinion in the case of Fish v. Chicago, R. I. & P. Ry. Co., 172 S. W. 340, wherein the questions

of assumption of risk and contributory negligence are discussed and considered by the court after having referred to the case of Seaboard A. L. Ry. Co. v. Horton, supra, and the Fish case, which is the last decision of our Supreme Court on the question, is positive authority for the correctness of the instructions on contributory negligence and assumption of risk in our case. Besides, we find nothing in the Federal cases or in the Federal act itself that undertakes to say that the various State courts are to change their views of what the common law is relative to assumption of risk and contributory negligence; indeed, it would seem that the Federal courts leave it to the State tribunals to determine these questions. [Thornton on The Federal Employers' Liability and Safety Appliance Acts (2 Ed.), pp. 4-5, note.] As the Constitution of the United States requires that a bankruptcy act passed by Congress must be a uniform law, it is by no means uniform in its application on many questions arising where the law is placed in operation. For instance, it leaves the State authorities to say what exemptions shall be set aside to the bankrupt and it leaves it to them to say what conveyances are fraudulent. In both these particulars, probably no two States have identically the same laws in force. Yet the bankruptcy courts uniformly enforce the laws of the various States on these questions. There are many States which hold that a servant does assume the risk of his master's negligence, whereas Missouri and other States prefer to hold that the servant never assumes the risk of such negligence and work the justice of the cases out on the theory of contributory negligence. And, as before stated, we find nothing in the law that requires all States to apply the common law on contributory negligence and assumption of risk exactly the same. Congress has seen fit to pass a Federal Employers' Liability Act and use therein certain well-known terms having a common-law meaning, such as "contributory negligence," and "assumption of risk,"

and has not undertaken to define them. It therefore must follow that Congress intended for the act, when called into operation, to be applied according to the construction of those common-law terms by the various State courts. In discussing the case of Seaboard A. L. Ry. Co. v. Horton, supra, our Supreme Court in the case of Fish v. Chicago, R. I. & P. Ry. Co., 172 S. W. 340, said: "The effect of that decision and of the act construed therein, and of the previous decision of the Supreme Court devolving concurrent jurisdiction upon the courts of the several States to enforce the provisions of said act, is to require them, in passing on the defense of assumption of risk, to apply as a standard the common-law rule on that subject. This points a plain pathway—that of the common law as adopted, interpreted, expounded, and enforced in the respective States."

As to the particular facts of the case before us, the instructions complained of do not contain reversible error under the law as declared by the latest cases decided by the Supreme Court of the United States on the subject; and the instructions clearly declare the law correctly under the rule announced in the Fish case, supra, decided by the Supreme Court of our own State, wherein it was dealing directly with the question in the light of the latest decisions of the Supreme Court of the United States.

We do not agree with appellant that the negligence of one of defendant's employees in leaving the jack at the place where plaintiff stepped on it was such a danger as was "normally and necessarily incident to" plaintiff's occupation. Plaintiff did not assume the risk that might befall him because of the presence of the jack on the floor because he did not know that defendant had been negligent in that regard.

The *ordinary* risks of going into this stall which was insufficiently lighted without a lantern might be such as these: The track might extend an inch or two

above the floor and trip an employee; or, he might walk too close to the wall where jacks and tools not in use were supposed to be kept and stumble over them; or, he might walk too close to the engine and come in contact with the steps or some other projection; or, he might fall in one of the engine pits. But this case is different. Plaintiff says it was not his duty to look out for tools on the floor of the stalls and that he was not looking out for obstacles when he went into this stall. He says there was a rule posted to the effect that workmen must put up their tools when through with them and that he relied on its observance. Defendant contends that a demurrer to plaintiff's evidence should have been given, and by doing so admits all reasonable deductions from plaintiff's evidence. This case is not like that of Cincinnati, N. O. & R. Ry. Co. v. Swann's Adm'x (Ky.), 169 S. W. 886, for in that case it was one of Swann's duties, as foreman of a gang of men, to look out for trains, and the defendant railroad—his employer—did not owe him any of the duties the breach of which was assigned as negligence.

If it was negligence not to have a light between stalls thirteen and fourteen, as plaintiff alleged, and plaintiff knew of that negligence, yet his knowledge of such negligence would not be an assumption of the risk of falling over a jack negligently left on the floor of stall fourteen by defendant concerning which plaintiff had no knowledge or information.

The condition of this stall as to light was the same as on other occasions—a condition which was open and obvious to the plaintiff; but, if it be said that he should have carried his lantern, the answer is that his failure to do so was no more than contributory negligence because this is not one of those cases where darkness is the sole cause of the injury, and under the Federal act contributory negligence does not bar recovery; and the trial court would not have been justified in giving

a peremptory instruction against plaintiff because of it.

It is true, the employer in this case was not an insurer of the safety of the place. Liability, under the act, must be based on negligence. [Seaboard A. L. Ry. Co. v. Horton, supra.] Now technically speaking there is no Federal law of negligence; the Federal courts apply the law of the State where the injury occurs. [Thornton on The Federal Employers Liability and Safety Appliance Acts (2 Ed.), pp. 4-5, note.]    In Missouri, it is the duty of the employer to exercise ordinary care to furnish his employee a reasonably safe place in which to do the work required of him, regard being had for the nature and character of the work. [Rowden v. Daniell, 151 Mo. App. l. c. 24, 132 S. W. 23.] And the courts hold that this duty is a continuing one. [Myers v. Pittsburgh Coal Co., 233 U. S. 184, 58 L. Ed. l. c. 910.] If there was negligence on the part of the employer *in the case before us,* it was in failing to exercise reasonable care to discover and rectify a dangerous condition produced by the wrong of one of its employees. The plaintiff testified that the day foreman gave him a line-up on the engine in stall fourteen to the effect that it was all right; that none of his men on the night shift did any work on the engines in stalls thirteen and fourteen except to build a fire in the engine in fourteen which did not require the use of a jack; and finally, that the machinist and helper who worked overtime the night before from the preceding day shift worked in stall twelve which was two stalls removed from fourteen. It is a reasonable inference, then, that the jack was left on the floor of the stall by some employee during the day preceding the injury, at which time the defendant saw fit to have two men employed for the express purpose of picking up tools and keeping the floors clear, besides having those two men supervised in this work, first, by the day foreman, Ryan, and also by the general roundhouse foreman, Burke.

The bulletin posted in the roundhouse requiring work-
men to put away tools when they were through with
them shows what the master thought of the necessity
of keeping the floor of the stalls clear. As said in the
case of Johnson v. The Kansas City Bolt and Nut Co.,
172 Mo. App. l. c. 218, 219, 157 S. W. 665: "A master
does not discharge his full duty towards his servant by
merely prescribing a method of work which if properly
performed by other servants would maintain a reason-
ably safe place for such servant. The duties of master-
ship include those of reasonable supervision and inspec-
tion to see that the work is being properly done and
plaintiff was entitled to the protection of the proper
performance of that duty. . . . It was a question
of fact for the jury to determine as to whether or not
the obstruction had remained in the passageway a suffi-
cient time for defendant in the exercise of reasonable
care to have discovered and removed it before the in-
jury. Reasonable care means care commensurate with
the dangers of the employment. What would be rea-
sonable care in one case might be gross negligence in
another. Taking all of the circumstances of the pres-
ent case into consideration we hold that the jury were
justified in concluding that it was negilgence of defend-
ant to allow a dangerous obstruction to remain in the
passageway from one working day to another." Tak-
ing the plaintiff's evidence as true that it was not *his*
duty to see that tools were not scattered around the
stalls and that he was not expected to be on the look-
out for such obstacles on the floor as he knew of the
master's posted rule and was not bound to presume it
would be violated, in connection with the inference
fairly deducible from the evidence that it was an em-
ployee of the day shift who committed the act of neg-
ligence, and the fact that defendant had two sweepers
whose duty it was before plaintiff went on duty to pick
up jacks and other tools negligently left on the floor,
must we say that it is *not even a jury question* whether

defendant was guilty of actionable negligence in failing to discover the dangerous condition *merely because defendant did not employ any one at night to be its vice-principal in this respect?* If so, a specific for liability for injuires to employees has been discovered. The master cannot thus wash his hands of responsibility. The evidence for the plaintiff, considered in the aspect most favorable to plaintiff, does not show that he was defendant's vice-principal for the purpose of inspecting stalls for tools that may have been left by a day employee in violation of the rule. A reasonable man might say it was the duty of the general foreman of the roundhouse to look after such matters for the defendant, as both Ryan, the day foreman, and plaintiff, the night foreman, were subject to his orders; or he might say it was the duty of the two men hired by defendant for the express purpose of cleaning up after the workmen—and according to the testimony given at the trial these two men remained on duty for perhaps an hour after the day shift quit. If defendant did not see fit to provide men at night to see to it that the day shift had put up their tools, it must suffer the consequences; at least, it must be willing to introduce its proof and let the jury say whether it had fulfilled its obligation to its employee or whether it had shown that the employee was its vice-principal in the particular case. We think it was a jury question whether the jack had remained on the floor of the stall a sufficient time for defendant in the exercise of reasonable care to have discovered and removed it before the time the injury occurred.

In view of the fact that respondent in his brief admits that recovery was predicated on the theory that the jack had been negligently left on the floor of the stall for a sufficient length of time—to-wit, by a workman of the preceding day shift—to fasten constructive knowledge of its presence at that place on the defendant, and preferring to pass upon this appeal on

the same theory on which the case was tried in the circuit court, we will not go into the question as to whether or not the defendant under the terms of the Federal act was entitled to a reasonable time within which to discover the jack on the floor of the stall and remove it on the theory that the negligence of the defendant was in reality the negligence of a fellow-servant of the plaintiff. The first section of the act does not relieve the defendant of the consequences of the negligence of an employee who is a fellow-servant of one injured. There is nothing in this case requiring us to construe the Federal Employers' Liability Act with reference to whether or not under the wording of the act an employer governed by it is entitled to a reasonable time within which to discover and rectify a dangerous condition brought about by the negligence of any of its officers, agents or employees. The act is couched in clear and unambiguous language and speaks for itself, and a construction thereof will be timely when a case is presented under the act which was tried on a theory that calls for a construction of it. We have held that the court properly overruled the demurrer to the evidence under the theory on which the case was presented to it. And, as the question above mentioned (concerning a possible construction of the Federal act) is not raised by the appellant, the party against whom we are ruling, and as the discussion of the questions which are raised and pressed upon us for decision has called for an opinion of considerable length, we do not feel disposed to take up and decide this question raised for the first time by respondent after the case reached this court.

Appellant complains of plaintiff's first instruction for the reason that it entirely ignores the defense of assumption of risk. It does—except that it concluded by referring to "the next succeeding instruction and the other instructions given." The "next succeeding instruction" makes no reference to the defense of as-

sumption of risk, but it concludes: "then you are warranted in finding the issues for plaintiff under this and the other instructions herein." The very next instruction deals exclusively with the subject of assumed risk. It is true that the main instruction should properly include all the defenses and cover the whole case; however, as the one given in this case did not do so, since defendant did not offer a proper instruction covering the whole case, it is not in position to complain. There is no principle better settled than that instructions which are good as far as they go, but which do not cover the whole case, amount in civil cases only to nondirection, and not to error, and it is the duty of the other party to ask for proper instructions. [Moore v. Railway Co., 136 Mo. App. 210, 116 S. W. 440.] And if he does not do so he cannot complain that they did not cover the whole case. [First National Bank of Mexico v. Ragsdale, 171 Mo. 169, 71 S. W. 178.]

Appellant's contention that the court erred in giving plaintiff's second instruction is disposed of by what has been said thus far in this opinion.

It is contended that the court erred in giving plaintiff's third instruction, which is as follows: "The court instructs the jury that a servant assumes the ordinary risks incident to his employment but does not assume the risks caused by the negligence of the master, or his failure to perform his duties to his employees, and if in this case you should find that the defendant or any of its officers, agents or employees were negligent in whole or in part under the requirements set out in these instructions, and that such negligence, if any, directly caused the injury to plaintiff, then plaintiff did not assume the risks arising from such negligence, if any." Under the ruling in the case of Fish v. Chicago, R. I. & P. Ry. Co., supra, in which our Supreme Court was dealing with the Federal Employers' Liability Act, it is clear that the foregoing in-

struction correctly declared the law applicable to this case.

Appellant contends that the court should have given its requested instruction ''I''—which was in fact a peremptory instruction to find that plaintiff was guilty of contributory negligence in proceeding in the manner and at the time he did without a lantern. We think that under the evidence it would have been improper to have given that instruction. In view of the fact that it was ''daylight enough outside to see without a lantern''—and the fact that the lanterns were not coal oil lamps and did not give a bright light and were big at the bottom so as to exclude the light somewhat from the floor, and, according to one witness, were not used to work with but merely to keep people from running over each other—and the fact that Clark, the hostler, went entirely around the engine with his lantern and did not see the jack—and the fact that the jack was black like the floor so that after the injury, workmen had to hunt for it with a torch—and the fact that plaintiff did not know of its presence on the floor —we think the question of contributory negligence was one for the jury.

Appellant's contention that the court erred in refusing its instruction ''J'' telling the jury that if plaintiff was furnished with a lantern but proceeded in the dark without it he assumed the risk of so doing. As we have stated, this is not a case where the darkness was the sole cause of the injury. Plaintiff did not know of the presence of the thing on the floor of the stall that was to be the cause of his injury, and it is settled law that a servant does not assume the risk of that which he does not know of unless it is obvious, etc.

Appellant's instruction ''K'' which was also refused covered practically the same field as that traversed by its instruction ''J'' using different language, concluding that if plaintiff did not carry his lantern then the failure of the defendant to provide a station-

ary light was not the proximate cause of the injury and plaintiff could not recover. All that appellant has to say as to the refusal of this instruction is: "Under the evidence in this case said instruction was a proper declaration of the law of assumed risk." As a matter of fact—and this is a sufficient answer to appellant's contention—the instruction in no way touches the question of assumption of risk.

Other contentions made by appellant have been examined and found to be without merit.

The question of contributory negligence was touched upon in four of the instructions which were given and defendant's rights as to this defense were amply protected.

Upon the whole record the judgment should be affirmed. It is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur, the latter in a separate opinion.

## SEPARATE CONCURRING OPINION.

STURGIS, J.—The principal ground of negligence relied on by plaintiff is the negligence of another employee in leaving a screw-jack where the plaintiff in the course of his work tripped over the same and fell to his injury. The other ground of negligence relied on in failing to have the place of the accident properly lighted is preventive in its nature and would only enable the plaintiff to avoid the probable, and in this case the actual, consequence of the first act of negligence. The petition sets out this first act of negligence of another employee as causing his injury. He also alleges that this act of negligence in leaving the screw-jack where it was left occurred such a length of time before the accident happened, that defendant knew, or by reasonable care could have known, of same so as to have removed it before the accident. This last allegation in effect alleges additional negligence, either (1) in that defendant did not have an employee to perform the

duty of cleaning up and inspection to prevent tools or other obstructions left through the negligence of employees from remaining an unreasonable length of time (which would be negligence of the master direct), or, (2) that the servant employed for that purpose was negligent in not carefully and efficiently performing his duty of inspection and cleaning up (which would be negligence of another employee).

The defendant insists that there is not sufficient evidence to establish such length of time between the act of negligence in leaving the screw-jack in the passageway and the accident caused thereby as warrants a finding of negligence in not discovering and removing the same before the accident. Granting that this is true, what difference does it make as to defendant's liability under the Federal act in question? If defendant is liable in either event, that is, whether sufficient time did or did not elapse to charge defendant with the duty of discovering and removing the obstruction left there by the negligence of an employee, the plaintiff could charge both the original negligence in leaving the screw-jack in the passageway and the additional negligence of not discovering and removing same and recover on either according as the facts might show and be found by the jury. This is what the petition does. A finding that the defendant is guilty of additional negligence in failing to discover and remove the screw-jack within a reasonable time includes a finding that there was negligence in leaving same in the passageway in the first instance. I think that the defendant would be liable under the Federal act because of the original negligence of an employee in leaving the screw-jack in the passageway whether or not he proved the additional negligence arising from a failure to discover and remove the same within a reasonable time.

The Federal act, by section two thereof, makes the employer engaged in interstate commerce "liable in damages to any person suffering injury, . . . for such injury or death resulting in whole or in part from the negligence of any of the *officers, agents, or employees* of such carrier." Section three of this act makes the interstate carrier liable for such injury in proportional part, though the plaintiff is guilty of negligence on his part contributing to his own injury. It is the settled law that this act abolishes the rule exempting the master from liability for the negligence of a fellow servant. By the terms of the act the master is liable to an employee for the negligence of any other employee. [Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Pedersen v. Delaware, L. & W. R. Co., 229 U. S. 146, 57 L. Ed. 1125; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, 1069; Thornton on Employers' Liability & Safety Appliance Acts (2 Ed.), 399.] The defendant is therefore liable for the negligent act of an employee whether officer, agent or fellow servant, and this includes the employee who left the screw-jack in the passageway or the one, if any, who was negligent in his duty of inspection and cleaning up and the employer would, of course, be liable for its own direct negligence in failing to have any employee to perform this last-named duty.

The plaintiff by his instructions predicated defendant's liability solely on the additional negligence involved in not discovering the screw-jack, or using reasonable care to do so, within a reasonable time. In doing so the plaintiff placed on himself an unnecessary burden and restricted his right to recover within too narrow limits. If the jury had found that there was not sufficient time elapsing after the screw-jack was left in the passageway to constitute negligence in not discovering same, the defendant was, nevertheless, liable for the negligent act of its employees in leaving it

there. As the jury could not find for plaintiff on the ground it did without finding the facts which made negligence on the other theory, the error was altogether in defendant's favor.

The facts of this case do not show that the act of negligence in leaving the screw-jack in the passageway, or in failing to discover and remove same, was the act of any employee under the direction and control of the plaintiff and for whose act he is responsible within the rule stated in McGrory v. Railroad (Ark.), 118 S. W. 710; Linck's Adm'r v. Louisville & N. R. Co. (Ky.), 54 S. W. 184; Minster v. The Citizens' Ry. Co., 53 Mo. App. 276, 280; Moore v. Jones (Texas), 39 S. W. 593; and Evans v. A. & P. R. R. Co., 62 Mo. 49. I do not say, however, that the rule announced in these cases, or some of them at least, is not applicable to the Federal act in question.

Under this view of the case it is no defense that the screw-jack may have been left in the passageway by workmen of the day shift who continued their work at night. If the screw-jack was left in the passageway by these workmen, this fact would shorten the time for discovering the danger, but defendant's liability is not dependent upon that fact. It was not plaintiff's duty to inspect and clean up after such men quit work and see that no tools were left by them constituting danger to himself or other workmen and such negligence is not his.

While some of the language in Johnson v. Kansas City Bolt & Nut Co., 172 Mo. App. 214, 157 S. W. 665, is to the effect that, where the master's negligence, in not discovering and rectifying the dangerous condition produced by the negligent act of a fellow servant, intervenes in the chain of causes producing the injury, it becomes the proximate cause; yet, the holding there is no more than that the master's negligence thereby combines with the negligent act of the servant and for the

combined negligence of the master and servant the master is liable.

As there is little question but that the negligence of the employee in leaving the screw-jack in the passage-way was the real cause of plaintiff's injury, the question of defendant's liability therefor under the Federal act is the principal question in the case.